FREEDMAN and GILDERSLEEVE, JJ., concur.
Judgment affirmed, with costs.

---

## MARTIN *v.* JOHNSTON et al.

(New York Superior Court—General Term, December, 1893.)

A finding, in an action for breach of contract, that the plaintiff failed to observe and plainly violated the promises and agreements made by him in such contract, calls for the dismissal of the complaint.

An agreement between a master and servant may be much more than a mere promise by one to pay a stipulated sum for services promised by the other; and although the servant may be wrongfully discharged, he may not be thereby released from the observance of covenants and conditions contained in the agreement, and may forfeit his right to damages by his own violation of the agreement.

Plaintiff entered into an agreement with the defendant by which he was to be employed as editor of a paper published by the corporation

defendant at a specified salary, and which contained a specific agreement on his part that while he continued to be so employed he would do nothing whereby said corporation should suffer damage; that he would not lend or give his name for use to any electrical corporation or company as director, officer, trustee or otherwise; nor purchase nor hold stock in, or devote any of his time or attention to such a corporation or company without the written consent of the defendants. Difficulties arising, plaintiff was discharged, and subsequently, within the current year, entered the service of a rival corporation as editor of its paper. In an action to require specific performance of the contract by payment of the salary for the year, *held*, that the dismissal of plaintiff, even if wrongful, did not relieve him from his engagement not to become interested in or identified with a competing company or corporation, and having violated the agreement on his part, was not entitled to claim specific performance by defendant.

APPEAL from a judgment, entered upon the report of a referee, dismissing the complaint.

The facts appear fully in the opinion of the referee as follows:

HAMILTON ODELL, Referee. The complaint set forth an agreement made between the plaintiff and the defendant Johnston, and alleges a breach thereof by said defendant, and the relief demanded is that the plaintiff recover of said defendant the sum of $2,500 and interest, and that the defendant be required to specifically perform the said agreement, in part, by the delivery to the plaintiff of twenty shares of the stock of the defendant, the W. J. Johnston Company.

For several years prior to the making of said agreement the defendant Johnston had been the proprietor and publisher, in the city of New York, of a newspaper called *The Electrical World*, and the plaintiff had been employed as one of the editors thereof. In the latter part of the year 1888 Johnston determined to form a corporation for the purpose, among other things, of conducting and publishing said paper, and such corporation (the defendant, the W. J. Johnston Company) was in fact formed in January, 1889, with $250,000 of capital stock, all of which was issued to Johnston in exchange for property transferred by him to the company. The agreement referred to was made on the 26th of December, 1888. It

was to go into effect on January 1, 1889, and was terminable by either party at the end of any year upon a written notice of thirty days. Martin thereby agreed to undertake the editorship of the said *Electrical World*, and to devote his entire time and attention to the duties of that position and the interests of the contemplated W. J. Johnston Company at a yearly salary of $2,500. He further agreed to be diligent and faithful in the discharge of his said duties, and to do no act or thing whereby the business of the said W. J. Johnston Company should suffer any damage or loss while he continued to be so employed, and that he would not " lend or give his name for use to any electrical corporation or company as director, officer, trustee or otherwise," nor " purchase or hold any stock or certificates of stock in any electrical corporation, company or partnership, or become interested therein, without first obtaining the written consent of the party of the first part (Johnston) nor, while in said employment, devote any of his time or attention, during business hours or otherwise, in the interests or to the advantage of any other corporation, company, person, firm, electrical or otherwise, without the consent of the party of the first part, or of a majority of the directors of the W. J. Johnston Company." And it was expressly declared that these covenants, or some of them, on the part of Mr. Martin, were made " solely for the purpose of protecting the independence, reputation and standing of *The Electrical World*, as the connection in any way of an officer or employee of the W. J. Johnston Company with any other electrical corporation, company or partnership might seriously injure said *Electrical World* and the business of the W. J. Johnston Company.

Upon his part the said Johnston agreed to transfer to Martin 100 shares of the capital stock of the said company, which should be retransferred by Martin to Johnston to be held in trust by him, and twenty of said shares should be surrendered to Martin at the end of each year of the continuance of the agreement ; and Johnston further covenanted and agreed " that if, during the years 1889, 1890 and 1891, the dividends upon the said stock do not reach the sum of $2,500 per annum,

he, the said Johnston, will make up to said Martin the deficiency upon the stock owned by him."

During 1889 the plaintiff performed his stipulated duties and received his salary from the company, and at the close of the year the defendant Johnston, as the agreement required, delivered to him twenty of the said shares of stock. He was also paid dividends for that year upon the 100 shares, amounting to $2,500. By this time differences had arisen between the two. The attitude of each towards the other was uncomfortable, if not hostile. The plaintiff testifies that he was not at fault, and charges the defendant with improper interference with him in his editorial duties, with a denial of his rights as a stockholder and officer of the company, and with other unreasonable conduct. The defendant testifies that he was not at fault, and accuses the plaintiff of insolence, inattention to business and insubordination. Of course (it is always so) both parties were more or less to blame, but it is not necessary for me to determine which was the greater offender. There was serious trouble between them on the 7th of February, 1890, and on subsequent days, and on the fifth of March, after a rather spirited altercation, Martin received from Johnston the following letter of dismissal : " Your services as editor of *The World* will not be required after to-day. If you have any personal belongings at the office please remove them this afternoon. The cashier will pay you on Saturday the amount due you for salary." This letter was either accompanied or swiftly followed by an intimation from Johnston that if the plaintiff did not retire peaceably he would be forcibly ejected. A formal tender of further services under the agreement was made by Martin and refused by Johnston. Thereupon Martin quietly accepted the situation, received from the company the salary due him, and very soon afterwards entered the service of *The Electrical Engineer* as editor of that journal.

There is no direct testimony to that effect, but it is to be fairly inferred that Martin regarded his contract relations with Johnston as terminated by his discharge and by John-

ston's refusal to permit him any longer to serve as editor of *The World.* It may be safely said that no action like the present would have been instituted by the plaintiff had not the defendant on June 7, 1890, three months after the plaintiff's dismissal, written to the plaintiff as follows: "Please to take notice that I elect to terminate at the end of this year the contract between us dated December 26th, 1888." This the plaintiff insists was a distinct admission by the defendant that the said contract had not been terminated by anything that had gone before, but was still in force and would continue in force until the expiration of the time limited in the defendant's notice, and that it was also a waiver of any past default or breach of duty on the part of the plaintiff of which the defendant might have availed himself to terminate the contract. Both of these propositions may be admitted without removing or reducing the difficulty which, it seems to me, stands in the way of the plaintiff's recovery in this action.

It is a settled rule of law that neither party to a contract can enforce it against the other without showing performance or an offer or willingness and readiness to perform on his part. In *May* v. *Schuyler*, 11 J. & S. 107, the court said: "When the right to compensation depends upon a special contract plaintiff must perform the undertaking assumed by him, and no matter what the terms and conditions may be, upon which the right to compensation depends, they must be performed as a condition precedent to a right of action for the recovery of the specific compensation." This does not mean a literal performance in every particular and detail. A substantial performance is all that is required. *Woodward* v. *Fuller*, 80 N. Y. 315. The same rule prevails in equity. A party who seeks to enforce a contract must show performance or its equivalent on his own part before he becomes entitled to relief. Pom. Eq. Juris. § 1407; Story's Eq. Juris. § 771; *Jones* v. *Lynds*, 7 Paige, 301; *Burling* v. *King*, 66 Barb. 639; *Crane* v. *Decamp*, 6 C. E. Green, 414; *Boone* v. *Missouri Iron Co.*, 17 How. (U. S.) 343; *Marble Co.* v. *Ripley,*

10 Wall. 357 ; *Stewart* v. *Raymond R. R. Co.*, 7 S. & M. 568 ; *Watt* v. *Rogers*, 2 Abb. Pr. 261. It is the duty of the court to inquire how far the reciprocal obligations of the party seeking relief have been fairly and fully performed. Story's Eq. Juris. § 736 ; *Crane* v. *Decamp*, 6 C. E. Green, 414. " If the plaintiff's simple negative conduct, his neglect to do what he has undertaken to do, is sufficient to prevent his obtaining the remedy of specific performance, much more does the same result follow from his affirmative acts which are in direct violation of the contract." Pom. Eq. Juris. § 354.

Whatever the plaintiff was entitled to receive under the agreement of December twenty-sixth, whether salary, stock or dividends, was in the way of compensation for the services which he engaged to render. His right to demand salary, stock or dividends was conditioned upon his performance of the duties and his observance of the covenants assumed by him by that agreement. That the defendant had the right to rescind the agreement for sufficient cause is not disputed. Neither is it disputed that on the fifth of March he assumed or attempted to exercise that right. Whether the defendant's action on that day in notifying the plaintiff that his services as editor of *The World* were no longer required, and his subsequent action in refusing to accept further services from the plaintiff, were justified by any misconduct or default on the part of the plaintiff, has been a matter of prolonged and vigorous contention between the parties before me. In the view which I take of the case it is not material whether the plaintiff was rightfully discharged, or whether the defendant's notice of June seventh operated to prolong the agreement of December twenty-sixth until the expiration of 1890. I shall assume that the agreement was in force during the whole of the last-mentioned year and that each party continued bound to the other according to its terms.

Here may be mentioned another well-settled rule of law. When one party to a contract refuses or fails to perform, it is the duty of the other party so to act that the damages to the defaulting party shall be made as light as possible. *Johnson*

v. *Meeker*, 96 N. Y. 97. But a servant, wrongfully discharged, is bound only to use reasonable diligence to procure other employment, and he is not required to accept employment of a different character, or employment of any kind in a different locality. *Costigan* v. *Mohawk & Hudson Co.*, 2 Den. 609; *Fuchs* v. *Koerner*, 107 N. Y. 529. The contract of service remains in full force in his favor although broken by his employer, and his remedy is to treat it as continuing and sue for damages for the breach. *Howard* v. *Daly*, 61 N. Y. 369; *Weed* v. *Burt*, 78 id. 193. In computing his damages account will be taken of wages received by him from other employment after his dismissal and down to the expiration of the contract, or of wages that he might have earned in similar employment offered to him and refused, or which he might have obtained by the exercise of reasonable diligence. *Costigan* v. *Mohawk & Hudson Co.*, 2 Den. 616. But the agreement between master and servant may be much more than a mere promise by one to pay a stipulated sum for services promised by the other; and although the servant may be wrongfully discharged, he may not be thereby released from the observance of covenants or conditions in the agreement contained, and may forfeit his right to damages by his own violation of the agreement upon which he founds his action against his employer.

Mention has already been made of the provisions of the contract in question, by which the plaintiff bound himself during the continuance thereof to do no act or thing whereby the business of the W. J. Johnston Company should suffer any damage or loss, directly or indirectly, and not to lend or give his name for use to any electrical corporation or company, or to become interested, as stockholder or otherwise, in any electrical corporation, company or partnership, and of the express declaration of the contract that such provisions were made "solely for the purpose of protecting the independence, reputation and standing of *The Electrical World*, as the connection in any way of an officer or employee of the W. J. Johnston Company with any other electrical corporation, company

or partnership might seriously injure said *Electrical World* and the business of the W. J. Johnston Company." It appears from the proofs that within about ten days from the date of his dismissal by the defendant, the plaintiff entered the employment of a corporation called *The Electrical Engineer;* that about the first of April he became the editor of a paper published by said corporation and bearing the same title; that he has ever since remained in such employment and so employed; and that he is also a stockholder in said corporation, although the date of his becoming such has not been shown. It further appears that *The Electrical Engineer* is a rival paper to *The Electrical World,* occupying the same field and competing with *The World* for support from the same source and same class of patrons. This brings into a clear light the question whether the plaintiff has so kept his agreement with the defendant that he has a right to require of the defendant a strict performance upon his part. Has he so done equity that he has a right to ask it?

It seems to me that the wrongful discharge, if it was wrongful, of the plaintiff did not relieve him from his engagement not to become interested in or identified with a competing electrical corporation or company. He cannot insist that his agreement with Johnston remained in force as to Johnston's covenants, but was no longer obligatory upon himself. He cannot excuse his entering the service of a rival corporation by the plea that the law required that he should do what he could to reduce the defendant's loss, because the defendant, by the agreement, had prohibited him from entering such service. I cannot see upon what ground the plaintiff can come into a court of equity alleging that this agreement was in force until the close of 1890, and claim a specific performance of it by the defendant, when it appears by undisputed testimony that he, the plaintiff, from about the date of his dismissal to the end of the year, was disregarding his own agreements, and engaged in aiding and building up an enterprise which was rival, if not hostile, to the W. J. Johnston Company.

A decree for a specific performance is never a matter of right. It rests in judicial discretion and may be granted or withheld upon a consideration of all the circumstances. *Miles* v. *D. F. I. Co.*, 125 N. Y. 297; *Margraf* v. *Muir*, 57 id. 158; *Burling* v. *King*, 2 T. & C. 545; *Gale* v. *Gale*, 42 Barb. 320; *Martin* v. *Platt*, 5 N. Y. St. Repr. 290; *Marble Co.* v. *Ripley*, 10 Wall. 357. That discretion should never be exercised in favor of a plaintiff who "has so conducted himself as to destroy all claim to its interposition." *St. John* v. *Benedict*, 6 Johns. Ch. 111.

For reasons stated above the defendant is entitled to judgment dismissing the complaint.

*Masten & Nichols*, for plaintiff (appellant).

*Thomas J. Keigharn*, for defendants (respondents).

GILDERSLEEVE, J. This is an appeal by plaintiff from a judgment entered in favor of defendants upon the report of a referee dismissing the complaint. The action was brought to compel the specific performance of a written contract. The complaint contains the usual allegations of due performance of all the conditions, covenants and agreements to be kept and performed by plaintiff, and charges that the defendant Johnston failed to keep and perform the contract on his part. None of the evidence taken before the referee appears in the record, as the case comes up on exceptions filed to the referee's report. The plaintiff has not appealed from the referee's refusals to find the facts in plaintiff's favor, and plaintiff must, therefore, be held to acquiesce in the conclusions of fact reached by the referee. Has the learned referee, upon the facts as found, reached a correct conclusion of law? The determination of this question seems to be the sole duty of the General Term.

In the sixteenth finding of fact the learned referee finds "That the plaintiff failed to observe, and plainly violated, the promises and agreements made by him in the said agreement." The learned referee holds that the plaintiff is guilty of affirma-

tive acts in violation of the contract. This is an insurmountable obstacle in the way of plaintiff's success upon this appeal. Such a finding calls for the dismissal of the complaint. It would seem that plaintiff's proper course would have been to treat the contract as continuing and sue for damages for the breach by defendant Johnston.

All we now decide, however, is that, upon the facts as found by the referee, the complaint was properly dismissed.

For these reasons, and for the reasons set forth in the opinion of the learned referee, which appears in full in the papers before us, the judgment must be affirmed, with costs.

FREEDMAN and McADAM, JJ., concur.
Judgment affirmed, with costs.