Johnston, J.
(dissenting in part). The action is by an employee to recover damages for the alleged breach of an *535 employment contract and for unpaid compensation. The defendants are H. R. Laboratories, Inc., the employer, and Helena Rubinstein, Inc., the guarantor of the contract.
The employer is a manufacturer of cosmetics, doing a gross annual business of $10,000,000. Plaintiff entered its service on May 16, 1932, under a written contract. There were several renewals of the contract, and in 1940, it was extended for five years, ending May 16,1945. The stipulated salary was $9,600 a year. Plaintiff’s duties, as specified in the contract, were, among others, that he was to act as chief chemist at the employer’s laboratory and factory and to have charge of the technical supervision thereof, and he also was to have charge and be responsible for the manufacture of all products and to engage in research and experimental work. In connection with research, plaintiff was to create new cosmetic preparations and to improve products then being manufactured. In the discharge of his duties plaintiff was to follow such instructions and directions as might be given by the president, or the vice-president, or the board of directors. The contract also granted the employer an option to renew the agreement for a further period of five years from May 16, 1945, provided the option be exercised in writing on or before March 16, 1945. On the giving of such written notice the agreement was to be deemed renewed under the same terms and conditions, except that the salary was to be $10,000 a year during the renewal period. Prior to March 16,1945, plaintiff and Madame Rubinstein — the employer’s president — had several conferences, at which the former requested that his salary be increased, and the latter replied that the employer was not only anxious to retain plaintiff’s services, but willing to increase his annual compensation to $15,000. At those conferences Madame Rubinstein suggested the desirability of the employer engaging another chemist as consultant. To this plaintiff had no objection, provided the new chemist was satisfactory to him and under his supervision and his duties did not encroach upon plaintiff’s prerogatives, as defined in the contract. These conferences did not result in a definite understanding and on March 16, 1945 — the last day specified in the contract for the exercise of the option — the employer sent plaintiff the following letter: “ Please be advised that pursuant to paragraph 8 of our agreement dated April 16,1940, we hereby exercise the option granted therein to renew and extend this agreement for a further period of five years from May 16,1945 to May 16, 1950. The terms and conditions of the extended period of employment will be incorporated in a new agreement which will conform to the under *536 standing heretofore reached between you and Madame Rubinstein.” The Official Referee, to whom the action was referred to hear and determine, held that the above- letter constituted a valid exercise of the option and, under the circumstances, the Statute of Frauds was not a valid defense. I am in accord with that view.
On May 18,1945, two days after the renewal term began, the employer, without consulting or informing plaintiff, hired a chemist, one Doctor Sobell, for the period commencing June 11th, and ending December 31, 1945, at $290 a week, or at the rate of approximately $15,000 a year. Admittedly, shortly after the employer engaged Doctor Sobell, a memorandum was prepared at Madame Rubinstein’s direction and delivered to plaintiff. This memorandum stated, inter alia, that it was decided that the research and manufacturing departments should be separate departments, each headed by a chemist; and the memorandum also defined the functions of each department. Suffice to say Doctor Sobell was placed in charge of the research department and was to do all research work on new products and' on the development or correction of present products, and the plaintiff, who in the memorandum was designated as the chief chemist, was to remain in charge of the manufacturing department. Obviously, under the new set-up plaintiff was relieved of some of his former duties which were to be performed by Doctor Sobell, and not under plaintiff’s supervision. Nevertheless, I believe it fair to say that plaintiff and Doctor Sobell were to have equal authority, each in his sphere of activity. Neither was to be superior or subordinate to the other. The memorandum also provided that if any difference of opinion arose between the research and manufacturing departments, the decision should be made by Madame Rubinstein. Plaintiff objected, claiming that by changing his duties the employer was changing his position, and he refused to continue finder the new plan, insisting it was contrary to the agreement by which the research department was to be under his control and in his charge.
When an employer refuses to permit the employee to perform the substantial or principal service he agreed to perform, and directs him to perform a different service, then the employee may treat such refusal and direction as a discharge. (Loos v. Geo. Walter Brewing Co., 145 Wis. 1.)
Whether or not the change of powers and duties effectuated a change in plaintiff’s position, as defined in his contract, and thus constituted a breach thereof, was a question of fact. *537 (Marks v. Cowdin, 226 N. Y. 138.) The Official Referee found as a fact that the employer’s conduct deprived plaintiff of his rights, privileges and authority under the contract and constituted a breach thereof, and awarded plaintiff $20,000 damages. While I agree with the Official Referee’s finding, in my opinion there is no basis for the award of substantial damages.
Prima facie the measure of damages for breach of an employment contract is the wage stipulated to be paid during the balance of the term. “ The actual damage is measured by the wage that would he payable during the remainder of the term reduced by the income which the discharged employee has earned, will earn, or could with reasonable diligence earn during the unexpired term.” (Hollwedel v. Duffy-Mott Co., Inc., 263 N. Y. 95, 101.) In accordance with the rule applicable to all contracts, plaintiff was under obligation to act so as to save his employer from such damages as could reasonably be diminished or avoided. His duty was to use reasonable diligence in entering into other employment in order to relieve the employer as much as possible from loss consequent upon the breach. (Howard v. Daly, 61 N. Y. 362, 370.) The kind of other employment the employee is under a duty to seek or accept in order to reduce the damages caused by his wrongful discharge has been variously defined. He is not required to enter on a new business or one different from that which he had undertaken. (Fuchs v. Koerner, 107 N. Y. 529.) The other employment must be “ of the same kind ” (Milage v. Woodward, 186 N. Y. 252, 259), and in the same locality (Taylor v. Bradley, 39 K Y. 129, 141); of the same general nature and description (Costigan v. Mohawk and Hudson R. R. Co., 2 Denio 609, 616), but not necessarily of exactly the same kind or even at the same salary (De Loraz v. McDowell, 68 Hun 170, 172, affd. 142 N. Y. 664). It must be of a similar character (Martin v. Johnston, 6 Misc. 310, 316, affd. 148 N. Y. 740), or employment which is suited to his station (Ruland v. Waukesha Water Co., 52 App. Div. 280).
The Official Referee found that plaintiff did not unreasonably refuse any offer of similar employment from strangers, nor was he shown to have been lacking in diligence to obtain other employment from strangers. With that conclusion I agree.
While, as heretofore pointed out, the legal effect of the employer’s act in not permitting plaintiff to remain in charge of both the research and manufacturing departments, as agreed, was tantamount to plaintiff’s discharge and constituted a breach of the contract, he actually suffered only nominal damages. Admittedly defendant H. R. Laboratories, Inc., at all *538 times offered to continue plaintiff in its employ, which was equivalent to an offer to re-employ him not as suggested in the majority opinion as “ foreman ”, but as chief chemist in charge of the manufacturing department for the same term, at a salary of $15,000 a year — an increase of 50% of the stipulated compensation. That such offer was made in good faith is not questioned.
A servant, after his wrongful discharge, in order to minimize his damage is, under ordinary circumstances, obligated to re-enter the employment of the master at the latter’s request. (Kay v. Frick, 211 App. Div. 809; Heiferman v. Greenhut Cloak Co., 143 N. Y. S. 411, revd. 83 Misc. 435, revd. 163 App. Div. 939.) The failure to accept the offer of re-employment goes only to a reduction of the amount of the recovery for the wrongful discharge and is not a defense in bar of the action. (De Loras v. McDowell, supra.) But such an offer of re-employment is ineffectual to reduce damages unless the discharged servant be bound to accept it. (Levin v. Standard Fashion Co., 16 Daly 404.) The servant is not required to accept an offer of re-employment in a different business of the master (Fuchs v. Koerner, supra), or in the same business at a lower salary (Whitmarsh v. Littlefield, 46 Hun 418), or for a different term (De Loraz v. McDowell, supra), or where the work is more arduous (Connell v. Averill, 8 App. Div. 524), or where the master has been guilty of misbehavior (Levin v. Standard Fashion Co., supra). None of these conditions exists in the case at bar. “ It was the right, therefore, of defendant to call upon him [plaintiff] to serve it in the same line of business as the original employment, or to provide employment for him, and his refusal to take such service without any good reason should operate to diminish his damages.” (Bigelow v. Am. Forcite Powder Manuf. Co., 39 Hun 599, 601.)
If another concern, engaged in the same business and in the same locality and doing a gross annual business of $10,000,000, offered plaintiff a position as chemist in charge of its manufacturing department, at an annual salary of $15,000, he would not be justified in refusing it. I perceive no reason why he should be at liberty to do so if a similar offer came from his employer.
If it were not necessary that the offer of other employment from a stranger should include service in both its research and manufacturing departments, it was not necessary that the offer of new employment from defendant H. B. Laboratories, Inc., should include service in both departments. In other words, *539 if the offer of other employment was as a chemist in charge of one department, it would be unreasonable for plaintiff to reject it. It was equally unreasonable for plaintiff to reject re-employment as chemist in charge of. one department. (Squire v. Wright, 1 Mo. App. 172; Flickema v. Henry Kraker Co., 252 Mich. 406, and annotations thereto in 72 A. L. R. 1049.)
The damages of a secretary who has been wrongfully discharged or whose employment has terminated because of breach of contract by the principal are diminished by the amount whicn he might have obtained as a typist when it became reasonable for him to accept such position. (Bestatement, Agency, § 455, Illustration 1.)
In Ryan v. High School District (27 Col. App. 63) it was held that one employed as principal of a high school may not refuse an offer of a position as principal of a grade school — even though the first-mentioned position was a promotion from the other, a step higher or more desirable — where the salary, the term, the locality and the line of work are the same. A similar result should follow here, particularly as1 plaintiff was offered $15,000 to be in charge of the manufacturing department, whereas he earned only $10,000 when in charge both of the manufacturing and research departments.
The majority assumes that in order to be effective to mitigate damages, an offer of re-employment must be to exactly the same position plaintiff formerly occupied. That is not the law when the offer of employment is from a stranger, nor is it the rule when the offer is from the former master. As heretofore pointed out, the duties and authority of the position that the employer offered to plaintiff were not as extensive as those specified in the contract of employment, and that is why the employer must be held to have breached the contract. But for the purpose of mitigating damages, it is only required that the offer of re-employment be to a position not unreasonably inferior to that for which plaintiff originally contracted. The position of chief chemist in charge of the manufacturing department of defendant H. B. Laboratories, Inc., is not unreasonably inferior to the position of chief chemist in charge of manufacturing and research.
Of course an employee whose employer has wrongfully prevented him from performing his contract should not be required, in order to protect his right to recover damages therefor, to accept re-employment if by so doing it would permit the employer to claim that he had consented to a modification of the original contract (Bigelow v. Am. Forcite Powder Manuf. *540 Co., supra; Holloway v. Levine, 107 Vt. 396; Farmers Co-Operative Ass’n v. Shaw, 171 Okla. 358), or to an abandonment, of his right of action for the resultant loss (Restatement, Agency, § 455, comment d) 5 Williston on Contracts [Rev. ed.], § 1359). But plaintiff, by accepting the offer of re-employment, would not be acceding to a modification of his original contract or forfeiting or prejudicing his claim for the loss occasioned by the employer’s breach of it. True, the preservation of plaintiff’s cause of action for the breach does not result in any monetary benefit to him, nor should it when he unreasonably refused to accept 50% more pay for 50% less work.
As a condition to his acceptance of the offer of re-employment plaintiff specified that the additional chemist be satisfactory to him and be under his jurisdiction. That condition was arbitrary and capricious and plaintiff’s refusal to re-enter the master’s employ unless that condition were fulfilled may not be construed as a legal ground for the refusal of the offer. In Heiferman v. Greenhut Cloak Co. (supra), plaintiff was employed as a designer and general superintendent of defendant’s cloak and suit manufacturing business. He was wrongfully discharged during the term of the contract. A few days thereafter defendant offered to re-employ him. Plaintiff demanded, as a condition to his acceptance of the offer, that another designer hired by defendant be discharged, on the theory that he (plaintiff) was by his contract to- be the general superintendent. It was held that this was an unreasonable condition.
I do not suggest that plaintiff was required to re-enter defendant’s employ. He was free to accept or reject defendant’s offer of re-employment “ according to his uncensored pleasure.” All I hold is that, under the circumstances disclosed by this record, plaintiff’s rejection of the offer was unreasonable and, hence, he suffered no actual money loss attributable to the act of the employer and, therefore, he is entitled only to nominal damages. The rule is stated by the late Chief Judge Cardozo in McClelland v. Climax Hosiery Mills (252 N. Y. 347, 358-359): “ The statement is made not infrequently in treatise and decision that a servant wrongfully discharged is 1 under a duty ’ to the master to reduce the damages, if he can. The phrase is accurate enough for most purposes, yet susceptible of misunderstanding, if emphasized too sharply (American Law Institute, Tentative Restatement of the Law of Contracts, § 328). The servant is free to accept employment or reject it according to his uncensored pleasure. What is meant by the supposed *541 duty is merely this, that if he unreasonably reject, he will not be heard to say that the loss of wages from then on shall be deemed the jural consequence of the earlier discharge. He has broken the chain of causation, and loss resulting to him thereafter is suffered through his own act. It is not damage that has been caused by the wrongful act of the employer.” To the same effect see Haughey v. Belmont Quadrangle Drilling Corp. (284 N. Y. 136, 142).
It is. suggested that appellant H. R. Laboratories, Inc., is not now in a position to urge that it was unreasonable for respondent to refuse its offer of re-employment because it did not advance such a claim at the trial or on this appeal. It is sufficient to say that the allegations of damages in the complaint were denied in the answer, and the issue of respondent’s damages was contested at the trial and is raised in this court. Respondent was put on notice that his claimed damages were being disputed. At the trial that appellant introduced proof that it offered to continue respondent in its employ at a salary of $15,000 a year, and also that respondent had unreasonably rejected other offers of employment. We are not confined in our determination of the question of damages to the arguments presented. If respondent failed to present proof to show that it was not unreasonable for him to reject the offer of re-employment, he cannot complain now.
The award of damages on the first and second causes of action should be reduced from $20,000 to six cents.
The recovery of $449.98 on the third cause of action, for unpaid salary, was proper.
The judgment should be modified on the law and the facts by reducing the recovery to $450.04, with interest from June 15, 1945, and, as thus modified, should be affirmed. New findings of fact and conclusions of law to sustain the modification of the judgment should be made.
Lewis, P. J., Aldeich and Nolán, JJ., concur with Hagaety, J.; Johnston, J., dissents in part, with opinion, and votes to modify the judgment by reducing the amount thereof to $450.04, with interest thereon from June 15, 1945, and, as thus modified, to affirm.
Judgment affirmed, with costs.