Patrick J. Picaribllo, J.
In this action brought by plaintiff to recover damages for defendant’s breach of agreement, defendant interposed, inter alia, the affirmative defense of lack of consideration. The decisive facts are not in issue.
Plaintiff is a private investigation firm engaged in the business of supplying undercover operatives and rendering security services to the retail industry. Defendant is in the retail sales business and operates department stores for the retail sale and distribution of its products.
The subject agreement is in printed form prepared and supplied by plaintiff and was executed by the parties on January 24,1961. By its terms defendant “ retains Dale ¡System, Incorporated to provide an under-cover examination of its operations through the assignment of one operative of Dale System, Incorporated, to work as an employee of the undersigned. It is understood and agreed that their operative shall receive the same compensation and employee benefits as those of the undersigned’s employees who perform the same function that said operatives will ostensibly perform. That-the undersigned shall pay to Dale System, Incorporated the sum of $800 per month, per operative (minimum one month) for said service, plus the sum of $100 per month to cover all expenses that may be incurred in connection with the said services, which sum excludes, however, the cost of transportation of the operatives from Dale System, Incorporated’s New York office to and from the sites of the job, which undersigned agrees to pay for in addition to said $100 for expenses.”
Printed in ink and interpolated on the face of the agreement by the defendant at or about the time of execution is the following legend, “ Starting time to be designated by American Fixture, Inc. ’’ This legend is initialed by plaintiff’s vice-president.
*846 Testimony was adduced to the effect that since defendant’s business was seasonal, it would be more propitious to supply such undercover operative at a time in futuro when defendant employed its maximum number of employees, Further testimony elicited from plaintiff’s vice-president indicates that at no time was there a definite commitment relative to the time for ■the placement of such operative, the same depending on such propitious time as above stated. Numerous demands, both by telephone and letters, were made by the plaintiff upon defendant regarding placement of said operative. These demands were met by defendant’s answer to the effect that the time was not yet propitious, until finally and by letter dated November 30, 1961, defendant notified plaintiff of the cancellation of the agreement.
Suit was thereupon instituted by plaintiff to recover the sum of $800 for breach of the aforesaid agreement by the defendant.
Plaintiff does not deny the fact that no services whatever were rendered by it under the said agreement; that the loss suffered by it and which, after trial, it seeks to recover $650 represents the profit it would ordinarily have realized on the agreement had the defendant not cancelled it.
The first question presented to the court is whether or not ■this agreement is valid and subsisting. The primary criterion for determining the question is the intention of the parties, as determined by the fair construction of the terms and provisions of the contract itself, by the subject matter to which it has reference, and by the circumstances of the particular transaction giving rise to the question. Presence or absence of consideration (as interposed by the defendant in its answer) is material only as going to the enforcibility of the purported agreement. Once the agreement has been executed, lack of consideration is beside the point and cannot be availed of to upset what has already transpired.
There can be no question in the instant case that there was a meeting of the minds in the execution of this agreement, nor is there any ambiguity or equivocation in the interpolated legend that the “ starting time (was) to be designated by American Fixture Inc.” This legend was not meaningless or useless. In the actual setting of the contract, and the record clearly so indicates, it reflected the express intention of the parties that plaintiff was not to perform until the time therefor became propitious in accordance with defendant’s business. This agreement of intention became manifest, resulted in the interpolation of the legend into the contract, and its raison d’etre is amply reflected by the record. While it may be true that the court *847 will construe the intention of the parties as a promise for a promise, a bilateral contract, wherever possible, the record in this case renders such a construction unjustifiable. Had the defendant discontinued its business for any reason whatever immediately after the execution of the contract, could the plaintiff have recovered the damages it now seeks for defendant’s failure to perform? Or, if business conditions had become such that defendant did not have the usual business season requiring the employment of more employees could the plaintiff have recovered the damages it now seeks for defendant’s failure to perform. The answer, obviously, is no. Payment for any benefit conferred on the defendant (and there was admittedly none in this case) might have been enforced in quasi contract and compensation for any services rendered (and again there was admittedly none) might have been enforced on an implied in fact contract. (See C'ostigan, Cases on Contracts, 175, n. 64 [1921]; Costigan, “ Implied-in-Fact Contracts and Mutual Assent,” 33 Harv. L. Rev. 376, 399, n. 35; Selected Readings on the Law of Contracts, 144, 163, n. 35.)
Did this legend create, or constitute, a condition precedent? The enforcibility of the agreement depends on .such construction. The promise to supply the undercover operative was not conditional; its performance was conditional. Plaintiff’s duty to perform came into being only after the happening of the event, that is, after the defendant informed plaintiff that it was ready, because of its business conditions, to accept plaintiff’s services. It would appear therefore that there was no reciprocity of agreement since plaintiff’s obligation arose only when the aforesaid condition precedent had happened, and not before.
Therefore, and by reason of plaintiff’s failure to plead its oral complaint in conformity with rule 92 of the Rules of Civil Practice, it became incumbent upon it to allege and prove the happening of the condition precedent, that is, that between the time of the execution of the agreement and the institution of this action, the time and circumstances to render its services became propitious, in accordance with the parties’ understanding at the time the contract was executed and that the defendant had failed and refused to avail itself of the same. Without this allegation and proof plaintiff cannot put defendant in default, notwithstanding the latter’s cancellation of the agreement. There could be no enforcement of the contract until the defendant manifested the propitiousness of the time for plaintiff’s services, or, in the absence of such manifestation by the defendant, plaintiff’s allegation and proof thereof. (See Petterson v. Pattberg, 248 N. Y. 86.)
*848 The court is in complete accord with plaintiff’s contention that wherever possible an agreement .should be given a fair and reasonable interpretation (Aron v. Gillman, 309 N. Y. 157, 163; Frank Associates v. Ryan & Sons, 281 App. Div. 665) and that if a contract is capable of a construction which will make it valid and enforcible, such construction will be placed on it (O’Neil Supply Co. v. Petroleum Heat & Power Co., 280 N. Y. 50). We are not here concerned with the validity of the contract; the issue is its enforcibility. There is nothing in the agreement providing that defendant was required to give notice within a reasonable time, as plaintiff contends. Even were the legend ambiguous and equivocal (and the court does not so find), all the circumstances leading to its execution, including the conversations between the parties before execution, as testified to in court by plaintiff’s vice-president, and permitted for the purpose of elucidation (3 ‘Corbin, Contracts, § 579, pp. 420-425) belie plaintiff’s present contention. In interpreting the agreement, the court will not make a new' one.
Moreover, and assuming the agreement were enforcible, and although the difficulty of ascertaining damages does not excuse their determination (1 New York Law of Damages, § 80, p. 139) and uncertainty of amount may not preclude recovery (Wakeman v. Wheeler & Wilson Mfg. Co., 101 N. Y. 205, 209) and mathematical certitude is unnecessary, a reasonable basis for the computation of approximate result being the only requisite (Eastman Co. v. Southern Photo Co., 273 U. S. 359, 379; Duane Jones Co. v. Burke, 306 N. Y. 172, 192; Mills Studio v. Chenango Val. Realty Corp., 15 A D 2d 138; Slater v. Kane, 275 App. Div. 648; 15 Am. Jur. Damages, § 21, pp. 412-413; Eestatement, Contracts, § 331), the court is of the opinion in this case that the plaintiff failed to sustain its burden of producing such sufficient and competent evidence as to enable it to form a basis for an estimate of damages with some exactness. (Haughey v. Belmont Quadrangle Drilling Corp., 284 N. Y. 136, 142.)
This action was tried before the court without a jury. Judgment for defendant dismissing plaintiff’s complaint, with costs.