Jack Stanislaw, J.
This action for declaratory judgment was tried before the court without jury. Plaintiff General Accident (General Accident Fire and Life Assurance Corporation, Ltd.) seeks a determination of its rights and responsibilities to the defendants with respect to an automobile liability insurance policy issued to one of them (Reeber) and as to which the defendant Blersch is an additional insured. Blersch is being sued, in his capacity as additional insured, by Reeber and Bialy, the third defendant here. It is the claim of General Accident that Blersch failed to co-operate with it, thereby breaching a condition of the policy and permitting it to disclaim coverage in the actions brought against him.
Reeber and Bialy have asked a determination also, that General Accident be declared obligated to defend Blersch and to pay any judgment which might be rendered against him in either or both of their actions. They defend affirmatively on the basis of plaintiff’s alleged waiver of the breach of the co-operation clause of the policy, and a present estoppel to assert such breach. Blersch was and is in default in the action, but was examined at length before trial and appeared at the trial as a witness for the plaintiff.
The underlying actions by Reeber and Bialy against Blersch arise out of an incident which took place January 17,1959. Both were seriously injured when a fan blade attached to the engine of Reeber’s car came off while the motor was running and struck them both. Blersch had been working on the car as a favor to Reeber. Reeber and Bialy claimed that Blersch’s negligence caused the accident and their injuries, and they each brought suit against him. General Accident, as the insurer of Reeber’s car, undertook Blersch’s defense.
*482 An investigative representative of plaintiff interviewed Blersch on October 10, 1959. This apparently was the company’s first contact with him, some nine months after the accident. The two of them, and a third person who was there with that investigator and transcribed the subsequent conversation, met at Blersch’s job as he finished work that day and walked into a restaurant-bar directly across the street. At a table inside Blersch related what had happened the evening of the accident, and sketched out some diagrams relating to the fan blade which had struck Beeber and Bialy. In effect, his statement indicated a latent defect in the fan blade itself which caused it to crack and fly loose. He signed or initialed the diagrams but not the statement, which he neverthless later admitted to be a correct transcription.
The actions against Blersch, with General Accident defending, proceeded in more or less- normal course until March 16, 1961. On that date Blersch appeared for an examination before trial at the office of Beeber’s attorney in the action, Reeber v. Blersch. During the course of the examination Blersch testified that he had removed the entire fan assembly from the engine while working on the car, and in replacing it had merely “ hand-tightened it ”. Thus, the comparatively loose fan flew off when Blersch raced the engine, and a part of a blade broke and struck both Beeber and Bialy.
As of this point in time, March 16, 1961, Blersch has given contradictory stories. One of his two distinctive versions of the cause of the accident is false (or perhaps even both), and General Accident now knows, or should have known, it. Bight here it must be added, with respect to Blersch’s testimony and his demeanor at the trial, that he was one of the most incredible witnesses this court has ever seen or heard or even read about in fact or in fiction. Without delving into the possible reasons for his behavior, suffice it to say that he admitted lying on so many different occasions that the only thing that we can be absolutely sure of is that he did give two conflicting statements. It is quite conceivable that Blersch himself is not too sure of the specific truth here, to say nothing of the court’s uncertainty. Chiefly for this reason, plaintiff’s second cause of action based upon Blersch’s allegedly intentional giving of false testimony at the examination before trial was dismissed.
There is no dispute about the fact that differing statements were given by plaintiff’s (additional) insured amounting to a breach of the co-operation clause of the policy. What is controverted is the legal efficacy of the affirmative defenses of waiver and estoppel raised by the other defendants. These can *483 only be resolved by an appraisal of the events subsequent to March 16, 1961. On April 11, 1961 plaintiff’s attorney received a transcript of his client’s (Blersch) already noted examination before trial. Meanwhile, and some eight days later (April 19, 1961) a motion was served upon this same attorney to restore Bialy’s action to the calendar. (An order granting the motion was later served, on May 15, 1961.) Back to Reeber’s action, the transcript was then forwarded to Blersch. When the executed document was not immediately returned Blersch’s attorney sent one of his representatives out to see Blersch to obtain the signed deposition or have it otherwise sent back. Eventually the transcript was received, as signed by Blersch sometime on or about June 9, 1961. Thereafter, arrangements were made for Blersch to go to plaintiff’s Jamaica, Queens, office on June 27, 1961. Before that date, a bill of particulars and hospital authorization were also received from Reeber’s attorney.
At any rate, on June 27 Blersch showed up at the Jamaica office, and was met by another attorney from the office of the company’s counsel. This attorney ostensibly came to assist in the correction of the transcript by Blersch. That attorney knew beforehand of the inconsistency in Blersch’s statements. His office had had other counsel actually with Blersch at the examination, and had then received the transcript of it about a month afterward. Thus, when Blersch proceeded to correct his deposition, reflecting his earliest version of the accident as given to plaintiff’s investigator in October of 1959, the content of the revision cannot have been too surprising. The mechanics of the corrective process began with Blersch reading the examination and then stating his desire to amend certain answers in accordance with his then more acute recollection. The attorney asked which answers, and Blersch, after pointing them out, proceeded to supply the changed responses. These were transcribed and Blersch signed both original transcript and amendments thereof after a lunch break. Two days later, June 29, 1961, plaintiff’s attorney forwarded the executed transcript and addenda to Reeber’s attorney. That same day he asked plaintiff’s claim manager to consider future steps which might be taken regarding Blersch’s defense. On July 21, 1961 plaintiff disclaimed because of the breach of the co-operation clause by Blersch. Plaintiff’s attorney withdrew with the court’s permission as contained in an order dated September 22, 1961, the result of his motion for same first served July 28, 1961.
It now remains to be seen whether General Accident waived, or is estopped from, disclaimer. We must start with the preliminary assumption, already noted, that Blersch did in fact *484 breach the co-operation condition of the policy. That breach occurred when he first contradicted his own prior statement to the insurer at his examination before trial of March 16, 1961 (United States Fid. & Guar. Co. v. Von Bargen, 7 A D 2d 872, affd. 7 N. Y. 2d 932). To argue that the breach became operative only after Blersch had signed the transcript ignores both the presence of counsel for Blersch provided by the company to represent him at the examination, and the provisions of CPLB, 3116 and its antecedents in the old Civil Practice Act.
Waiver is to be discerned by language or acts expressly or inferentially leading to that conclusion (Titus v. Glens Falls Ins. Co., 81 N. Y. 410), with full knowledge of the facts making out the breach to be waived (Lumbermens Mut. Cas. Co. v. Goldwasser, 7 A D 2d 849). In a purely theoretical context, a waiver may be said to represent the insurer’s breach of its duty to disclaim ‘1 promptly and adequately ’ ’ once the situation warrants (National Grange Mut. Liab. Co. v. Fino, 13 A D 2d 10).
It has been held that a discrepancy in the statements as to the happening of an “ insured ’ ’ occurrence is not only a breach of co-operation almost by definition, but also that it is similarly and simultaneously material and prejudicial as to the insurer (National Grange Mut. Ins. Co. v. Austin, 23 A D 2d 776; Fidelity & Cas. Co. of N. 7. v. Holdeman, 23 A D 2d 878). The rationale behind the duty to disclaim “ promptly and adequately ” is then obvious. The rights that accrue to the insurer by virtue of such a breach of co-operation are clear, definite and conclusive. Correspondingly, they must be asserted or lost. (If the consequences of the breach were less certain, the necessary reaction might be more broadly defined, but that is not the case.)
Defendants argue that within that “ prompt and adequate ” time within which disclaimer is available an insurer may, by conduct inconsistent with its subsequent decision to disclaim and not amounting to a waiver, be estopped from disclaiming. In other words, acts of an insurer prior to disclaimer, not amounting to waiver, may be so prejudicial and unreasonable as to the insured that it will be estopped from disclaiming thereafter. We are of the opinion that this argument is simply an exercise in semantic pyrotechnics. The result, giving an insured a method of foreclosing the patent availability of disclaimer, is the same in any event, and is subject to essentially the same requirements (see State Farm Mut. Auto. Ins. Co. v. Brown, 40 Misc 2d 694, revd. 21 A D 2d 742).
General Accident disclaimed some four months after the operative breach of co-operation by Blersch (United States Fid. & Guar. Co. v. Von Bargen, supra). And in the interim it *485 took active steps regarding the transcript of Blersch’s examination before trial, as described above. These steps and Blersch’s ultimate correction of the deposition at plaintiff’s request, are visualized by Reeber and Bialy as the company’s waiver of Blersch’s clear non-co-operation. (Della-Posta v. New York Cas. Co., 276 App. Div. 770.) It must be pointed out, however, that there has been no proof offered that Blersch was asked to come to the Jamaica office because of the provisions of the clause of the policy requiring his co-operation (Della-Posta v. New York Cas. Co., supra). His attendance there June 27, 1961 was apparently at plaintiff’s general request. This general request is then devoid of any element of reliance by the plaintiff on that same clause, which had been breached earlier, amounting to a waiver (National Grange Mut. Ins. Co. v. Austin, supra).
In spite of this limitation upon the affirmative defense of waiver, we conclude that there has been waiver here. No matter how Blersch came to Jamaica, or why, when he did it was more than four months after he had given his second (and different) statement. Under the circumstances, and in view of the knowledge General Accident undoubtedly had of its rights to disclaim as of March 16, 1961, its preoccupation with the state of the transcript is incomprehensible. Even so, it might have first legitimately reserved its rights (Fidelity & Cas. Co. of N. Y. v. Holdeman, supra). Except in an unusual situation, any attempt to pin down which of versions is true is unnecessary (cf. General Mut. Ins. Co. v. Grempel, 17 A D 2d 650). So far as plaintiff was concerned, this situation did not amount to such an unusual situation (especially in that the later story was worse, from plaintiff’s point of view, than the first one).
The court is constrained to hold plaintiff’s notice of intention to disclaim asserted too late. Its own duty in this respect was not fulfilled until after the passage of an unreasonable amount of time (cf. Appell v. Liberty Mut. Ins. Co., 22 A D 2d 906). The almost absolute privilege of disclaiming which arose in this case simultaneously imposed the duty on plaintiff that a decision to actually do so be made and acted upon. The overlong postponement of that decision, for whatever reason, eventually removes the ability to make it. We cannot emphasize too strongly that even a tentative indication would have been sufficient (Fidelity & Cas. Co. of N. Y. v. Holdeman, supra), as opposed to none at all.
The complaint is dismissed. Plaintiff is obligated to defend its additional insured, and to otherwise afford him the coverage of its policy.