T. Paul Kane, J.
The primary issue before the court is whether or not a standard automobile policy issued by defendant General Mutual Insurance Co. to defendant Edward Kucskar was in force and effect at the time defendant Kucskar was involved in an automobile accident.
In June of 1961, defendant Kucskar obtained a standard automobile policy from the General Mutual Insurance Co. (hereinafter referred to as “ General ”), through one Paul T. Ahearn (hereinafter referred to as “Ahearn”). Due to the age of the defendant Kucskar, the policy was issued pursuant to the assigned risk plan and the policy period was from June 29, 1961 to June 29, 1962. Ahearn issued an FS 1 and arranged for the financing of premiums through Agent’s Service Corp. (hereinafter referred to as “Agent’s”). In July, 1961, the insured received a premium payment book with the first pay.ment due August 5, 1961, pursuant to a premium finance agreement executed by defendant Kucskar. This premium was allegedly paid August 4 but thereafter the insured received *221 a notice of termination from Agent’s dated August 10, 1961, indicating an effective date of August 23, 1961, and on August 15, 1961, a similar notice was received from General indicating a termination date of August 28, 1961. On September 7, 1961, however, defendant Kucskar received a letter from General informing him the policy was reinstated as of August 28, 1961, with no lapse in coverage. Prior thereto and on September 5, 1961, defendant Kucskar had made a second premium payment in the amount of $26 to Ahearn and a third payment was made on September 25, 1961, being the payment due October 5 for coverage during the month of October.
On October 10, 1961, while operating the Ford automobile covered by the policy in question, the defendant Kucskar was involved in an accident, as a result of which infant plaintiffs Robert Johnson and Gerald Johnson received personal injuries. A report was made by the insured to General concerning the accident and he alleges that when he received summonses and complaints in the actions by Robert Johnson and Gerald Johnson, he delivered these papers to General. On October 21, 1961, Kucskar received a letter from General advising him that his policy had been cancelled as of September 24, 1961. Defendant Kucskar denies ever receiving any notices of cancellation or termination other than the ones referred to above. These actions were not defended, and subsequently judgments were entered against defendant Kucskar and remained on record until they were vacated on October 12, 1962, without prejudice to further proceedings. Thereafter actions were commenced against Motor Vehicle Accident Indemnification Corporation (hereinafter referred to as “MVAIC”) which resulted in awards to the plaintiffs. MVAIC is now pursuing its rights of subrogation in the within actions by Robert Johnson, an infant, and Gerald Johnson, an infant, against General and Kucskar for a declaratory judgment. Defendant Kucskar cross-claimed against General and the latter commenced a third-party action against Agent’s and Ahearn, seeking a further declaration that in the event rights are perfected against it, the third-party defendants be obligated to reimburse General and to pay all sums necessary to defend any actions commenced by plaintiffs against defendant Kucskar.
These matters are before the court at this time by virtue of a motion for summary judgment by defendant Kucskar against General. Plaintiffs Robert Johnson and Gerald Johnson have also moved for summary judgment against General and the latter has responded by seeking summary judgment against Agent’s and Ahearn, third-party defendants.
*222 The court has been provided with many affidavits, either attempting to show the presence of or lack of triable issues of fact. Indeed summary judgment is a harsh remedy and should not be granted where a material and triable issue of fact is presented (Di Menna & Sons v. City of New York, 301 N. Y. 118). At the same time, however, the court should not be reluctant to give the full meaning to this type of relief as was intended by the Legislature. It is undisputed that the notice of termination upon which General relics for a defense to these actions was dated September 11, 1961 effective September 24, 1961 at 12:01 a.m. and further that this notice was issued by Agent’s. Defendant Kucskar denies ever having received this notice. The materiality of this issue, however, might be nullified by a consideration of the notice requirements of the applicable statutes. It appears that Agent’s was engaged in the business of a premium finance agency pursuant to article XII-B of the Banking Law. This article became effective July 1, 1960 and has for its purpose the regulation of the insurance premium finance notes. It contains some 25 sections and sets forth statutory requirements in detail. Section 576 of this article regulates the notice to be given of a cancellation at the request of the holder of the premium finance note and provides that in such case the notice shall be governed by that section rather than by section 313 of the Vehicle and Traffic Law. Some question has been raised as to whether or not section 576 conceivably supersedes the notice requirement set forth in the assigned risk plan which incorporates the notice requirements of section 313 of the Vehicle and Traffic Law. The court considers that article XII-B of the Banking Law does not necessarily supersede any provisions of the assigned risk plan but rather effectively supplements all insurance writings involving a premium financing agency. Consequently, since the premium finance agreement of Agent’s purports to be executed pursuant to the requirements of article XII-B, the provisions therein shall generally govern all questions, subject to limited qualifications.
Of primary concern is whether Agent’s had the authority to cancel the insurance contract in question. Paragraph 3 of the premium finance agreement states that ‘ ‘ Failure by the assured to pay any installment when the same shall be due, or within 10 days thereafter, shall constitute default and the entire balance of premiums hereof shall be immediately due and payable without notice. Such default shall constitute an election by the assured to cancel the policy or policies, and the payee and/or assigns is hereby appointed irrevocably as attorney in fact, empowered to request cancellation from the insurance company, *223 and to request that return premiums he payable to the payee or its assign,” If there exists any other written authority enabling1 Agent’s to cancel the policy, it has not been set forth by any parties hereto nor is there any contention that such does exist. General contends that section 576 clearly indicates that the premium financing agency shall do the canceling and that this section should control rather than the particular contract entered into by the parties. Subdivision 1 of section 576, entitled Cancellation of insurance contract upon default, begins as follows: “ 1. When a premium finance agreement contains a power of attorney or other authority enabling the premium finance agency to cancel any insurance contract or contracts listed in the agreement, the insurance contract or contracts shall not be cancelled unless such cancellation is effectuated in accordance with the following provisions ”. General further contends that prerequisite power of attorney to cancel has been met in the present case, basing its contention upon the fact that a power of attorney to request cancellation is authority enabling the premium finance agency to in fact cancel a policy. With these and other contentions of General, the court cannot concur. The power of attorney given to the premium finance agency by the insured is limited to a request to the insurer who then may or may not cancel the policy. The court notes that this was the procedure in fact followed in regard to the notice of termination issued by Agent’s on August 10, 1961, and followed by another notice by General dated August 15, both of which were later nullified and coverage continued uninterrupted. On the notice dated August 10, 1961, a handwritten note reads as follows: “ The company will be asked to terminate this policy, unless payment is received in our office on or before August 17, 1961.” The purported notice in question dated September 11, 1961, was allegedly sent directly by Agent’s without any participation of General. The first notice sent by Agent’s seems to be more in conformity with the premium finance agreement in that it recognizes its position to request a cancellation rather than to effectuate one on its own initiative. The court can only conclude that as a matter of law according to the premium finance agreement, Agent’s had no authority to cancel on its own initiative. The premium finance agreement in question is quite different from the one in Stone v. Travelers Ins. Co. (40 Misc 2d 164, 167) wherein the payee was appointed as attorney in fact to effect cancellation of said policies ”,
Assuming Agent’s did have the authority to cancel the policy in question, there are further obstacles to be met. The first is that the notice requirement found in section 576 (subd. 1, *224 pars, [a], [b]) of the Banking Law, wherein 10 days are required with an additional 3 days for mailing such notice, apparently has not been met. The notice was dated September 11, 1963, to become effective September 24, 1961 at 12:01 a.m. Assuming that the termination notice was mailed on September 11, 1961, a total of only 12 days’ notice was given (see Cannon v. Merchants Mut. Ins. Co., 35 Misc 2d 625). General’s contention that it is quite possible that the notice of termination may have been in fact personally served and therefore within the time limitations, is untenable. All other papers refer to this notice as having been mailed and without doubt this would be the usual custom. In fact, the home office claims supervisor of General in his affidavit refers to a copy of this notice having been sent to the defendant, and further that the file material of General revealed that the said notice had been actually mailed to defendant Kucskar. The court finds therefore that the notice was in fact mailed and that, consequently, inadequate notice was given to effectively terminate the policy. These requirements are precise, involve substantial rights and must be strictly construed.
The additional contention of General that perhaps no notice to defendant Kucskar was at all required or necessary is also untenable, especially in view of the fact that the cancellation was allegedly effected for nonpayment of premiums. Under the assigned risk plan, section 313 of the Vehicle and Traffic Law, or article XII-B of the Banking Law, or any other possibly relevant section, no insured could suffer himself the loss of this right of notice, for it is this one factor that is of the greatest substance in any of those sections. In the case at hand, it would be unconceivable since Exhibits I, III and VI of defendant Kucskar on his motion are undisputedly receipts for premiums paid, Exhibit VI being paid on September 25, 1961, and due on October 5,1961, for coverage throughout that month.
Furthermore, if section 313 of the Vehicle and Traffic Law were to be applied, the notice therein is required to be given by the “ insurer ” and accordingly General would not prevail.
The court therefore finds that as a matter of law, the standard automobile policy issued by General in June of 1961 was in full force and effect on October 10, 1961, the date of the accident from which these actions have originated. Consequently, the motion for summary judgment by defendant Kucskar against General is granted, as well as the summary judgment by plaintiffs Gerald Johnson and Bobert Johnson against General. The motion by General for summary judgment against third-party defendants Agent’s and Ahearn is denied.