Bernard S. Meter, J.
Claimants, Arnold and Bernice Ole-nick, were involved on October 31, 1969 in an automobile accident with a 1960 Pontiac convertible operated by Lee Bryant and, according to the police report, owned by Philistine Bryant, both of 99% Grandview Avenue, Great Neck, New York. At the scene Lee Bryant was issued summonses for driving without a license, driving an unregistered vehicle and driving an uninsured vehicle. Those summonses have never been answered and warrants are outstanding. On March 20, 1970 a summons and complaint in an action against the Bryants was served upon them, but no appearance or other response has been made by them or on their behalf. In December, 1969 the Olenicks filed claims under the uninsured motorist indorsement of their own policy, issued by Government Employees Insurance Company. GEICO moved to stay arbitration on the ground that Lee Bryant was insured by State Farm Mutual Insurance Company and State Farm was then brought in as a party. Further investigation by State Farm turned up the fact that Liberty Mutual Insurance Company may have issued a policy covering the owner of the Bryant car and Liberty was then brought in as a party. The effect of adding State Farm and Liberty Mutual *767 as parties was to convert the motion for stay of arbitration into a declaratory judgment action (CPLR 103, subd. [c]; Matter of Elman v. MV AIC, 31 A D 2d 910). At hearings held on April 20, April 29, May 27 and September 17,1971 and by documents before the court by agreement of all parties, additional facts have been either proved or stipulated. The question for decision is whether either the 1960 Pontiac convertible or Lee Bryant was insured at the time of the accident, and if so by what company.
CANCELLATION OF PREMIUM FINANCED POLICY
The matter can be disposed of quickly with respect to State Farm. It concedes that it issued a policy of liability insurance to Lee Bayant of 99% Grandview Avenue, Great Neck, New York, on a 1960 Buick, but shows by its cancellation daily sheet and a copy of an FS-4, that the policy was canceled effective July 17, 1969. It has also submitted proof that Liberty Mutual issued to Phyllistine Bryant of 99 Grandview Avenue, Great Neck, an assigned risk policy .effective September 6, 1969, which was not canceled until December 5, 1969. The 1960 Buick insured by State Farm is shown by the State Farm declaration sheet to have been a four-door in body style and to have borne serial number 7(73002384. The records of the insurance broker who handled the assigned risk policy for Liberty Mutual as well as Liberty’s copy of the declaration sheet of the policy show the I9601 Buick to have been a sedan bearing serial number 793002384, and show Phyllistine Bryant’s address as 99% Grandview Avenue. Though the State Farm policy was issued to Lee and the Liberty Mutual policy to Phyllistine, and notwithstanding the discrepancies in the spelling of the last name and in the second character of the serial number, the court finds as a fact that the two policies covered the same motor vehicle. Not so to find would be to ignore the similarities of first names, address and car description, as well as the similarity in appearance when handwritten of a “ G ” and a “ 6 ”, and the high degree of improbability that the other eight characters of the serial number would be exactly the same and in the exact same sequence were there in fact two different cars.
The determination that the same car was insured by both State Farm and Liberty Mutual is important because there is no proof that notice of cancellation of the State Farm policy was actually received by the Department of Motor Vehicles, and the policy premium was financed. The premium finance agreement is not before the court and it, therefore, is not clear *768 that it contains the power of attorney necessary to bring section 576 of the Banking- Law into play (see Johnson v. General Mut. Ins. Co., 48 Misc 2d 219, affd. 26 A D 2d 602, mod. on other grounds 24 N Y 2d 42). If, however, it be assumed that the section is applicable and that the Department of Motor Vehicles never received notice of cancellation, State Farm’s cancellation was nonetheless, effective. The court has not overlooked the holding of Orisini v. Nationwide Mut. Ins. Co. (35 A D 2d 238, 240), that under section 576 “ cancellation is not effective unless the notice is filed as prescribed by the statute ’ ’ (see, also, MV AIC v. Davidson, 56 Misc 2d 246, affd. 35 A D 2d 785; Theodore v. Hartford Acc. & Ind. Co., 60 Misc 2d 991; Pitts v. Travelers Ins. Co., 59 Misc 2d 142). Its holding is predicated on the fact that while paragraph (e) of subdivision 1 of section 576 states that section 313 of the Vehicle and Traffic Law is not applicable to cancellation of insurance by a premium finance agency, paragraph (g) of subdivision 1 of section 576 requires filing of notice with the Commissioner of Motor Vehicles “ where such filing is required pursuant to * * * section three hundred thirteen of the vehicle and traffic law ” and the latter section expressly provides (subd. 1) that “if another insurance contract has been procured, such other insurance contract shall, as of its effective date and hour, terminate the insurance previously certified with respect to any motor vehicles designated in both contracts” and (subd. 2) that “no insurer shall be required to file a notice of cancellation or other termination * * * [with the commissioner] where the insurer has been advised by the commissioner that such insurance has been superseded by another insurance contract which took effect at or prior to the time at which the termination became effective ’ ’. Though State Farm was never advised by the Commissioner of the Liberty Mutual policy (indeed the Commissioner’s records, despite multiple inquiries, never disgorged information about the Liberty policy) and that policy took effect some seven weeks after the termination of the State Farm policy, the court would be ignoring the purpose of the compulsory insurance law (to provide 10-20-5 coverage against damage resulting from the operation of a motor vehicle; see Capra v. Lumbermens Mut. Cas. Co., 37 A D 2d 190) were it, applying the literal language of the statute, to hold that State Farm’s cancellation was not effective and the Buick was in fact covered by two 10-20-5 policies on the date of the accident (see Great Amer. Ins. Co. v. Cosmopolitan Mut. Ins. Co., 22 A D 2d 859). Matter of Martinez v. Ficano (28 A D 2d 215, mot. for lv. to app. den. 21 N Y *769 2d 642) is authority that the cancellation provisions of the Workmens’ Compensation Law need not be applied so literally, and it is but a specific manifestation of the principle of statutory construction, many times declared by the Court of Appeals, that the intent of the Legislature rather than the literal language used, is what governs (Matter of Hogan v. Culkin, 18 N Y 2d 330; Matter of Petterson v. Daystrom Corp., 17 N Y 2d 32; McKinney’s Consolidated Laws of N. Y., Book 1, Statutes, § 111). The court holds, therefore, that the State Farm policy was effectively canceled and that State Farm is entitled to a judgment so declaring and stating that it is not obligated either to provide a defense or pay any damages recovered by the Olenicks.
TIMELINESS OF DISCLAIMER.
As between GKEICO, Liberty and the Olenicks, the problems are more difficult. Liberty’s first notice of the accident and the Olenicks’ claim was a telegram sent by the Olenicks’ attorney on the day of the second hearing, April 29, 1971, and received by Liberty on Friday, April 30, 1971. Investigation was begun within a few days thereafter but not until June 4, 1971 did Liberty forward a reservation letter to Phyllistine Bryant, the named insured, and not until June 28 did it send disclaimer letters to the Bryants. All three letters were returned by the post office undelivered. The disclaimer was on the grounds of noncoverage, failure to give proper notice, and failure to co-operate. A copy of each letter was sent to the Ole-nicks’ attorney. Whether Liberty or GKEICO must respond to the Olenicks’ claims turns, then, on the timeliness of the disclaimer and if found timely, upon its validity.
Subdivision 8 of section 167 of the Insurance Law requires that ‘ ‘ an insurer * * * disclaim liability or deny coverage for * * * injury arising out of a motor vehicle accident occurring within this state [by giving] written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant.” Allstate Ins. Co. v. Gross (27 N Y 2d 263, 269) makes clear that a reservation letter is meaningless against a defense of untimeliness under the statute; that prejudice to the injured claimant need not be shown, the sole question under subdivision 8 of section 167 being whether there was undue delay; and that (p. 270) “ the question of unreasonableness becomes a question of fact, or if extreme, of law, depending upon the circumstances of the case which make it reasonable *770 for the insurer to take more or less time to make, complete, and act diligently on its investigation of its coverage or breach of conditions in its policy. ’ ’ In the Allstate case and in MV AIC v. United States Liab. Ins. Co. (33 A D 2d 902) delay of seven months was held unreasonable as a matter of law; in Appell v. Liberty Mut. Ins. Co. (22 A D 2d 906, affd. 17 N Y 2d 519) and General Ace. Fire & Life Assur. Corp. v. Blersch (46 Misc 2d 480, mod. 25 A D 2d 764, affd. 18 N Y 2d 633) delays of two months and four months after full knowledge of the facts were held unreasonable as a matter of fact; and in National Grange Mut. Liab. Co. v. Fino (13 A D 2d 10) disclaimer within one month after knowledge of the facts was held timely as a matter of fact.
The purpose of the disclaimer statute is concern for MVAIC, which can make a more complete investigation if given notice earlier rather than later, for the injured party, who may be misled into engaging in costly litigation, and for the insured (Allstate Ins. Co. v. Gross, 27 N Y 2d 263, 267, supra). In furtherance of that purpose, however, an unconditional statute has been enacted (ibid.). Timeliness of disclaimer is to be evaluated in the light of the circumstances confronting the insurer; that MVAIC or the injured party has not been prejudiced is not part of the equation. It is, therefore, of no moment that the Olenicks had already begun their action against the Bryants and that MVAIC had already made its investigation when Liberty first became aware of the Olenicks’ claim.
The criterion being the circumstances confronting the carrier, significance must be given to the dilemma posed for the carrier by a notice such as Liberty received on April 30, 1971. Under paragraphs (c) and (d) of subdivision 1 of section 167 of the Insurance Law the injured person is given rights as to notice independent of the insured, and the standards are less demanding as to him than to the insured (Rogers v. Merchants Mut. Cas. Co., 28 A D 2d 919). As to lack of co-operation, the burden of proof is upon the carrier (Insurance Law, § 167, subd. 5), which must show that the insured’s attitude was one of “ willful and avowed obstruction ” (Thrasher v. United States Liab. Ins. Co., 19 N Y 2d 159, 168), that it made a meaningful investigation (Rosen v. United States Fid. & Guar. Co., 23 A D 2d 335, overruled on other grounds Matter of Vanguard Ins. Co. [Polchlopek], 18 N Y 2d 376, 381) and appropriate efforts to reach the insured (Wallace v. Universal Ins. Co., 18 A D 2d 121, affd. 13 N Y 2d 978; Kehoe v. Motorists Mut. Ins. Co., 20 A D 2d 308; see National Grange Mut. Ins. Co. v. Lococo, 20 A D 2d 785, affd. *771 16 N Y 2d 585) or that insured in fact received communications from the insurer and failed to answer or acknowledge them. Knickerbocker Ins. Co. v. Guynn (31 A D 2d 748). Moreover, by stating the grounds for its disclaimer, the carrier waives all other possible grounds (Appell v. Liberty Mut. Ins. Co., supra).
Against that background, how is Liberty’s delay of 59 days from notice of the accident and claim to disclaimer to be evaluated? While it knew within a few days after April 30, 1971 that it had received no notice of the accident from its insured, it could not then risk disclaiming on that ground alone, especially since it had no knowledge at that time of claimant’s efforts to uncover the existence of the Liberty policy. Its investigation was begun on the first or second business day following receipt of notice and on May 7,1971 its investigator located Lee Bryant at the Grandview Avenue address, but Bryant refused to give a statement unless his wife (the named insured in Liberty’s policy) was present. An appointment for that purpose was made for May 12, but not kept. On May 12 the investigator left his card and a message that it was important for the Bryants to contact him. Thereafter he checked the post office and was told that so far as their records revealed the Bryants still lived at 99% Grandview Avenue, and checked at the Traffic Court where he found that there was a bench warrant outstanding for Lee Bryant based on charges arising out of the October 31, 1969 accident of operating without a license and operating an uninsured and unregistered motor vehicle. It does not appear that Liberty knew until the hearing on May 27, 1971 that the vehicle involved in the accident was not the 1960 Buick, which its policy covered, but a 1960 Pontiac; but, since the criminal charges furnished no defense to it if the vehicle was covered (Sperling v. Great Amer. Ind. Co., 7 N Y 2d 442) and in view of the “ temporary substitute ” and “ newly acquired ’ ’ provisions of its policy it could not be sure whether the Pontiac was covered, it cannot be said to have acted unreasonably in not disclaiming on those grounds without further investigation.
With respect to failure to co-operate, the question is a much closer one, but the court concludes that Liberty was not in possession of sufficient factual data by the end of May to warrant its disclaiming without further investigation. True it was obligated ‘ ‘ to make, complete, and act diligently on its investigation of its coverage or breach of conditions in its policy ” (Allstate Ins. Co. v. Gross, 27 N Y 2d 263, 270, supra) and by *772 the conclusion of the May 27 hearing it had contacted the driver (an additional insured) and knew that he had failed to file an M'V-104 concerning the accident, failed to answer the criminal charges lodged against him as a result of the accident, and failed to keep the May 12 appointment he had made. It had not, however, contacted its named insured, Phyllistine Bryant, and was warranted in making additional efforts to do so before disclaiming.
The further investigation was made by an outside claim serr vice which received the assignment on June 2, 1971, employed three investigators on the case, and sent its report to Liberty on June 17. On the basis of that report, which indicated an inability to locate the Bryants, authority to disclaim was requested from Liberty’s Boston office on June 23 and, permission being granted, the disclaimers were actually sent on June 28. In light of the consequences that can follow from an improper disclaimer, the requirement of home office authorization is reasonable, and considering the time necessary to make the further investigation and obtain such authorization, the court concludes on the facts that the disclaimer, of which the Olenieks ’ attorney received copies on their behalf, was timely.
NOTICE OF ACCIDENT.
Though Liberty’s disclaimer was timely, none of its three grounds can be sustained on the facts. With respect to notice of the accident, it has already been noted that the injured party has rights independent of the insured. The question to be determined is whether the notice given by the injured party was given “ as soon as practicable ” within the meaning of the policy and of paragraph (d) of subdivision 1 of section 167 of the Insurance Law. So, where at the time of the accident there was no public record of insurance coverage, a jury finding that notice 15 years after the accident was timely has been upheld (Florio v. General Acc. Fire & Life Assur. Corp, 396 F. 2d 510). It is not necessary to go so far in this case. Bepeated efforts by the Olenieks’ attorneys to ascertain whether there was coverage turned up only the State Farm policy. Not until April 29, 1971, when State Farm’s attorney produced evidence of the Liberty policy, was the existence of the policy known to the Olenieks’ attorneys, and on the same day they gave notice by telegram to Liberty and moved to have Liberty joined as a party to this action. Whatever the rights of the Bryants, the court finds that the Olenieks gave notice as soon as reasonably possible under the circumstances. As to them, disclaimer on the *773 ground of notice is ineffectual (Matter of Kelly v. MV AIC, 30 A D 2d 516).
FAILURE TO CO-OPERATE.
As to failure to co-operate, the injured party, being given no independent rights by statute, is bound, just as is the insured, by the conditions of the policy (Seltzer v. Indemnity Ins. Co., 252 N. Y. 330; Coleman v. New Amsterdam Cas. Co., 247 N. Y. 271). But as already noted, the burden is on the carrier to show that it acted diligently in seeking to bring about co-operation and that the insured’s attitude was one of willful and avowed obstruction. Diligence requires that when the carrier locates an insured it bring to his attention the consequences of non-cooperation (Coleman v. National Grange Mut. Ins. Co., 28 A D 2d 1073, affd. 23 N Y 2d 836). Here, though Liberty’s investigator testified that he located Lee Bryant on May 7 and “ explained why I was there and what I was attempting to do ” and that Bryant declined to give a statement until his wife, the named insured, was present, that testimony is insufficient to establish that he informed Bryant why the statement was required, or that failure to give a statement would result in loss of whatever insurance coverage there was. Furthermore, failure by Lee Bryant to co-operate would not terminate Liberty’s separate obligation to Phyllistine Bryant (Wenig v. Glens Falls Ind. Co., 294 N. Y. 195) and there is no evidence to establish that the need for co-operation was ever brought home to her. Liberty has failed to sustain its burden of proving lack of co-operation.
NONCOVERAGE.
The third ground of disclaimer, noncoverage, is predicated on the fact that while Liberty’s policy was written on the 1960 Buick sedan above referred to, both the police report and claimants identify the vehicle driven by Lee Bryant at the time of the collision as a 1960 Pontiac convertible. As to coverage, the injured person has, of course, no better or other rights than the insured (Marcus v. United States Cas. Co., 249 N. Y. 21). With respect to bodily injury and property damage coverage, the word “ automobile ” as used in Liberty’s policy means not only the automobile described in the policy, but also a 1‘ temporary substitute automobile” and a “newly acquired automobile.” No explanation from the Bryants being available, Liberty, GrEICO and the Olenicks each argues that the others have the burden of proof.
*774 BUBOES' OP PBOOF.
The burden of proof question is complicated by the fact that what began as a stay of arbitration proceeding between GEICO and the Olenicks has by the joinder of the other carriers been transformed into a declaratory judgment action. As between a claimant under the uninsured motorist indorsement in his own policy of insurance and his insurer, the burden of proving that the offending motorist was uninsured is on the claimant (Matter of Rosen [MV AIC], 20 A D 2d 704; Matter of MV AIC [Mahoney], 46 Misc 2d 3, affd. 25 A D 2d 821; Matter of Merchants Ins. Co. [Schmidt], 56 Misc 2d 360; Matter of Foster [MV AIC], 55 Misc 2d 784; see McCarthy v. MV AIC, 16 A D 2d 35, affd. 12 N Y 2d 922). As between the insurer and an injured party seeking to recover from the insurer on a policy issued to the offending motorist, however, the burden is upon the injured party to prove that the accident in which his injury was incurred falls within the coverage of the policy (Lavine v. Indemnity Ins. Co., 260 N. Y. 399; Bogardus v. United States Fid. & Guar. Co., 269 App Div 615, mot. for lv. to app. den. 270 App. Div. 801; Glogvics v. Preferred Acc. Ins. Co., 245 App. Div. 817; Green v. Globe & Rutgers Fire Ins. Co., 200 App. Div. 343; see Rushing v. Commercial Cas. Ins. Co., 251 N. Y. 302; Mason v. Allstate Ins. Co., 12 A D 2d 138); except, it seems, when the carrier relies on an exclusion clause (Green v. Travelers, Ins. Co., 286 N. Y. 358; O’Connell v. New Jersey Fid. & Plate Glass Ins. Co., 201 App. Div. 117, affd. 235 N. Y. 583). In an action-proceeding to which both his own and the offending motorist’s carrier are parties, can the injured person’s claims against both be defeated by his inability to prove either coverage or the lack of it?
The answer to that question is “ No,” both as a matter of policy and as a matter of logic. Subdivision 2-a of section 167 of the Insurance Law was enacted to close the gaps in New York’s compulsory automobile insurance law (1958 N. Y. Legis. Annual, pp. 244, 299, 473) and expresses the public policy of the State that persons injured by motorists who cannot be made to respond in damages, whether because of lack of insurance, disclaimer, insolvency of the insurer or otherwise, shall be protected (Matter of Vanguard Ins. Co. [Polchlopek], 18 N Y 2d 376, supra; Matter of Travis [Gen. Acc. Group], 31 A D 2d 20; Matter of Taub [MV AIC], 31 A D 2d 378). It would be contrary to that policy to absolve both carriers on burden of proof grounds.
*775 More importantly, to do so would be wholly illogical. A carrier which pays an uninsured motorist claim to its own insured is subrogated to its insured’s rights against the offending motorist and his disclaiming carrier (see Matter of Travis [Gen. Acc. Group], 31 A D 2d 20, supra). Its position vis-avis the disclaiming carrier is, therefore, the same as that of its insured. If neither is able to prove that the disclaiming carrier afforded coverage, the latter is entitled to judgment upholding the disclaimer and the injured person is entitled to judgment declaring that the offending motorist was uninsured and that arbitration of the uninsured motorist claim must proceed. The latter declaration results, however, not from any failure of proof in the contest between the injured person and his carrier, but because the declaration of the validity of the disclaimer establishes that the offending motorist was uninsured and thus meets the injured person’s proof burden.
TEMPORARY SUBSTITUTE AUTOMOBILE.
Turning now to the merits of the coverage question, the court holds on the facts that the Pontiac was not a ‘ ‘ temporary substitute automobile” but was a “newly acquired automobile” within the meaning of Liberty’s policy and that it must, therefore, defend the Olenicks ’ action and pay any resulting judgment to the extent of its policy limits. The policy defines a “temporary substitute automobile” as one “ not owned by the named insured or his spouse if a resident of the same household ”. The court finds that Phyllistine Bryant, the named insured, was the wife of Lee Bryant and resided in the same household. The Pontiac is stated in the police report to have been owned by Phyllistine but was carrying license plate MW 5517, which the Department of Motor Vehicles record shows to have been issued to Lee Bryant as the owner of the Buick. Owned by either Phyllistine or Lee Bryant (and no other ownership can reasonably be inferred), the Pontiac is by definition not a temporary substitute.
NEWLY ACQUIRED AUTOMOBILE.
A ‘ ‘ newly acquired automobile ’ ’ is, however, defined by the policy as “an automobile, ownership of which is acquired by the named insured or his spouse if a resident of the same household, if (i) it replaces an automobile owned by either and covered by this policy * * * and (ii) the named insured or such spouse notifies the company within thirty days following such delivery date; but such notice is not required under *776 [the bodily injury and other specified] coverages * * * if the newly acquired automobile replaces an owned automobile covered by this policy.” The automobile covered by Liberty’s policy was the Buick. The policy application was made by Phyllistine Bryant and states that no other vehicles were owned by any member of the household. From that statement and the use of the same plate on the Pontiac that had been used on the Buick, it is reasonable to infer, and the court so finds, that the Pontiac was acquired after August 29, 1969, the date of the policy application, and replaced the Buick covered by the policy. While it is not clear whether the Buick was owned by Phyllistine (her insurance application said it was) or by Lee (Exhibit I shows that the registration in his name was not changed before the plate expired at the end of November, 1969) or which of them owned the Pontiac (the police report says Phyllistine did, but it carried plates issued to Lee), the policy requires only that the new automobile be “ acquired by the name insured or Ids spouse ’ ’ and that it replace ‘ ‘ an automobile owned by either and covered by this policy” (emphasis supplied). In light of that definition it is unnecessary to decide which car was owned by whom; it is enough that the court find that both were owned by either Phyllistine or Lee, and that the Pontiac was, therefore, a newly acquired automobile (see Sheffield v. Aetna Cas. & Sur. Co., 57 Misc 2d 559) for which, since it replaced an owned automobile covered by the policy, no notice was necessary in order to bring it within the bodily injury coverage.