F. AMBROSE HAUGHEY et al., Respondents, *v.* BELMONT QUADRANGLE DRILLING CORPORATION, Appellant.

Argued April 12, 1940; decided October 8, 1940.

*A. H. Harpending* for appellant.

*Fitch H. Stephens* and *Olin T. Nye* for respondents.

LEHMAN, Ch. J.   In February, 1931, the plaintiffs and the defendant entered into a contract whereby the plaintiffs agreed to sell and the defendant agreed to buy the gas " that may be produced from the well or wells drilled and from any other wells which may be drilled " on certain tracts of land in Reading and Tyrone townships, described in the contract, upon which the plaintiffs owned gas leases, and also on " any other oil and gas leases that they may acquire in Reading and/or Tyrone township, Schuyler County, New York." The amount of gas which the defendant was obligated to take under the terms of the contract in any one month was limited to " 10% of the gas marketed by the buyer from *said field* during the preceding month." The plaintiffs did not after the making of the contract acquire " any other leases " in Reading or Tyrone townships, nor did they drive wells upon any tract, described in the contract, on which they already owned leases, except one tract of fifty acres known as the Allen tract. The defendant has paid the stipulated price for all the gas which it took from the plaintiffs' wells on the Allen tract. The gas from those wells is drawn from a pool of " sour gas " known as the " Altay Field," and the defendant owns leases and pipe lines within the limited area of that pool or field. At the time the contract was made, no other gas pool or field below the surface of any part of Reading or Tyrone townships had been discovered, but thereafter a pool of " sweet gas " known as the " Wayne Field," was discovered below the surface of a small part of Tyrone township, remote from the Allen tract. The defendant has pipe lines and draws gas from the Wayne field as well as from the Altay field. The plaintiffs have no wells in the Wayne field.

The controversy between the parties concerns the extent of " said field " referred to in the contract between the parties. The defendant contends that the " said field " includes only gas wells drawing gas from the pool or field known as " Altay " and refuses to take from the plaintiffs' wells, or to pay for, more than ten per cent of the gas marketed by the buyer from the Altay field. The plaintiffs claim that

the words " said field " refer to the entire territory within Reading and Tyrone townships and to any pools or store of gas below the surface of that territory, and that the amount of gas which the defendant must take from the plaintiffs' wells and pay for is measured by a percentage of the gas marketed by the defendant from both the Altay field and the Wayne field, since the plaintiffs under the terms of the contract have the right to acquire leases in all parts of that territory. In this action the plaintiffs seek damages for the defendant's failure to take and pay for ten per cent of the gas which the defendant marketed during the previous month from the wells in both of such fields.

The courts below have sustained the plaintiffs' claim that the defendant has failed to take and pay for the stipulated amount of gas. The plaintiffs have recovered a judgment which awards to them, as damages for such breach, the amount of the purchase price of all the gas which the defendant has failed to take. An analysis of the evidence introduced and the arguments of the parties upon the questions of the extent of the defendant's obligation and of the plaintiffs' right to recover damages caused by the defendant's refusal to take and pay for the stipulated amount of gas in accordance with that obligation would serve little purpose. We find no reversible error, there, in the rulings of the trial court or in its decision. The court, in our opinion, erred, however, in fixing the resultant damages.

The defendant's obligation was to take the stipulated amount of gas from the plaintiffs' wells and the contract provides " for the gas so furnished, supplied and delivered into the pipe line of Buyer   *   *   *   by Seller, the Buyer agrees and binds itself to pay unto Seller at the rate of Fifteen (15) cents per thousand cubic feet for natural gas delivered into lines of Buyer." The plaintiffs were required to lay properly equipped branch lines from their producing wells to the defendant's pipe lines. When the defendant drew the gas from the branch lines into its pipe lines, then delivery of the gas by the plaintiffs was complete; until then no title to the gas " produced " by the plaintiffs' wells passed

to the defendant. Indeed, the gas which the defendant took from the plaintiffs' wells into its own pipe lines was the only gas actually drawn from the underground pool and " produced " by the plaintiffs' wells.

The defendant is liable to the plaintiffs for any loss caused by its refusal to accept and pay for the gas which the plaintiffs were able to supply within the stipulated limits of its obligation. (Pers. Prop. Law [Cons. Laws, ch. 41], § 132.) Where title to goods passes from the seller to the buyer, the loss caused by failure to pay for the goods is, it is plain, the amount of the purchase price. Here, however, the gas which the defendant should have taken was never identified or set apart from the mass or pool tapped by the plaintiffs' wells, and no property in such gas passed to the defendant and none can pass to it now upon belated payment of the purchase price. Nor has the defendant agreed to pay the price " irrespective of delivery or of transfer of title." In such case the plaintiff cannot maintain an action for the price. (Pers. Prop. Law, § 144.) His remedy is an action against the defendant " for damages for non-acceptance " and in such action " the measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract." (§ 145.)

Since the buyer's wrong left intact the seller's power and right to take from the well the gas which the defendant should have taken and to sell such gas to any person ready and willing to buy it, the " essential element of damage is," it has been said, " the difference between the contract price, that is, the amount of the obligation which the buyer failed to fulfil, and the market price, that is, the value of the goods which the seller has left upon his hands." (2 Williston on Sales [2d ed.], § 582.) The plaintiffs in this action failed to prove that " essential element of damage " and the trial judge made no allowance for any value, to the plaintiffs, of the gas which the defendant failed to take, stating as his reason that the burden rests on defendant to show that the plaintiffs have failed to make " a proper effort to

minimize their damages by selling in the open market * * * (*Milage* v. *Woodward,* 186 N. Y. 252; *Peoples Gas & Electric Co.* v. *State of New York,* 189 App. Div. 421, 424; affd., 231 N. Y. 520; *Ware Bros. Co.* v. *Cortland Cart & Carriage Co.,* 192 N. Y. 439, 442), or at any rate defendant was required to ' go on with the proof ' after plaintiffs had made a *prima facie* case. (*McClelland* v. *Climax Hosiery Mills,* 252 N. Y. 347, 358; *Strong* v. *American Fence Construction Co.,* 245 N. Y. 48, 54.)"

The " loss directly and naturally resulting, in the ordinary course of events, " from a breach of contract is the measure of damages applied not only in actions brought pursuant to section 145 as a remedy for a buyer's breach of contract, but also in actions to recover damages for breach of other contracts. The nature of the obligation breached — the conditions and circumstances which differentiate one contract from another — are varying factors which must be considered in determining such loss. " Damages are recoverable for losses caused * * * by the breach only to the extent that the evidence affords a sufficient basis for estimating their amount in money with reasonable certainty " (American · Law Institute, Restatement of the Law of Contracts, § 331), and the plaintiff has always the burden of producing evidence sufficient to form a basis for the estimate. Evidence sufficient in an action for breach of a contract of employment may be insufficient in an action for breach of a contract of sale. An employer responsible for damages caused by his breach of a contract of employment may produce evidence which tends to show that the chain of causation between the wrongful discharge and consequent loss of wages was broken by the discharged employee's unreasonable failure to obtain or accept other employment which was available. " The great weight of authority is to the effect that the opportunity to be employed by another will not be presumed, but must be affirmatively shown." (3 Sutherland on The Law of Damages [4th ed.], § 693.) Unless it is established the loss which directly and naturally flows from the discharge is "*prima facie* * * * the

wages that would be payable during the remainder of the term." A discharged employee seeking such damages need go no further than is required to show a " *prima facie* " right to recover those damages. These principles, though sometimes phrased in form " susceptible of misunderstanding," have been long applied in this State in actions for damages resulting from wrongful discharge or from analogous violations of contractual obligations. (*McClelland* v. *Climax Hosiery Mills, supra,* 252 N. Y. 347. Cf. *Howard* v. *Daly,* 61 N. Y. 362; *Milage* v. *Woodward, supra,* 186 N. Y. 252.)

The loss resulting from the defendant's refusal to take and pay for the stipulated amount of gas is not even *prima facie* the purchase price, but is the difference between that price and the value to the plaintiff of the gas which the defendant failed to take. This court has said in similar case that the vendor's remedy is to " recover the difference between the market price at the time and place of delivery, and the contract price." (*Dustan* v. *McAndrew,* 44 N. Y. 72, 78. Cf. 2 Sedgwick on Damages, § 753.) That is the measure of damages which in the absence of special circumstances must be applied, in accordance with the statutory rule, where there is an available market. (Pers. Prop. Law, § 145, subd. 3.) Because the measure of damages which must be applied in this action and, ordinarily, in other actions brought by an unpaid seller for breach of a buyer's obligation to take and pay for goods, is the difference between the contract price and the market price or the value of the goods; and because there is no presumption that the goods are without value and that there is no available market for the goods, there is no sufficient basis for estimating the loss directly and naturally resulting from the buyer's breach of contract, unless the plaintiff supplies evidence of such facts or of other facts which would justify use of a different measure of the loss.

Here lies the distinction between an action to recover damages for a buyer's failure or refusal to take and pay for goods, and an action to recover damages for wrongful discharge. In both cases the plaintiff must establish facts

which form a basis for estimating the loss resulting from the defendant's breach of contract; but the "wages which would be payable during the remainder of the term" form the logical basis for determining the plaintiff's loss resulting from his discharge, unless it is established by presumption or by evidence that the plaintiff failed to take advantage of an opportunity to be employed by another, while the agreed price for goods forms no logical basis for an estimate of the plaintiff's loss resulting from a refusal by a buyer to take and pay for goods, unless in addition the value or absence of value of the goods is established by presumption or evidence. That distinction renders inapplicable the cases relied upon to sustain the recovery here.

We search in vain the record in this case for any evidence establishing that there was no market for the gas which the defendant failed to take. The fact that the plaintiffs had agreed to sell only to the defendant would, it is plain, not preclude a sale to another after the defendant failed to take the stipulated amount. It follows that the judgment must be reversed and a new trial ordered at which the damages should be measured in accordance with the rules herein stated. We do not now consider whether there is evidence which established that the plaintiffs were in fact able to supply gas up to the stipulated limit. Upon a new trial, a clearer answer to that question may be given.

The judgments should be reversed and a new trial granted, with costs to the appellant to abide the event.

Loughran, Finch, Rippey, Sears, Lewis and Conway, JJ., concur.

Judgments reversed, etc.