STEPHEN E. FEDEROWICZ, Respondent, v. POTOMAC INSURANCE COMPANY OF THE DISTRICT OF COLUMBIA et al., Appellants.

Fourth Department, March 11, 1959.

*Barth, Sullivan & Lancaster (John J. Sullivan, Jr.,* of counsel), for appellants.

*Saperston, McNaughtan & Saperston (Morton Mendelsohn* of counsel), for respondent.

Bastow, J. This appeal presents the narrow issue of the scope of evidence that may be introduced by an insurer in an action brought to recover under the provisions of standard fire insurance policies. Specifically it relates to that portion of the insuring agreement which provides that the company insures to the extent of the cash value of the property at the time of loss but not exceeding repair or replacement cost " nor in any event for

more than the interest of the insured ''. The question posed is whether the quoted language refers to the extent of the physical loss of the insured or his financial loss.

The plaintiff entered into a written lease with the New York Central Railroad Company by the terms of which certain vacant land was leased to plaintiff on a tenancy from year to year with the proviso that at the election of the lessor the lease might be terminated upon written notice of 30 days. In the event of the termination of the lease plaintiff was given the right to remove within five days all buildings placed on the land by the lessee. In the event of failure to do so the buildings became the property of the lessor. This lease was made a part of plaintiff's bill of particulars but defendants' offer thereof in evidence was rejected by the trial court upon plaintiff's objection.

Upon the trial there was proof that plaintiff erected on the land a building used as a garage and warehouse. On June 11, 1956 the structure was destroyed by fire. Prior thereto defendants had issued certain fire policies insuring this structure against loss by fire. These facts and other evidence relating to the value of the building were proved by plaintiff. The defendants in cross-examining the plaintiff attempted to explore the status of insured's tenancy at the time of the fire. The plaintiff by objection successfully stopped this line of inquiry. In view of the court's rulings thereon the defendants for their affirmative case relied upon certain offers of proof. In substance, defendants offered to prove that on March 6, 1956 the lessor served upon plaintiff a notice to remove from the leased premises; that a summary proceeding to dispossess was commenced on May 2, 1956; that a final order and warrant were made on May 9 and served on plaintiff on May 26, 1956; that thereafter plaintiff made arrangements to have the building demolished. The fire, as has been stated, occurred on June 11, 1956. On the other hand, there are intimations from plaintiff that if this proof should have been received he would counter with evidence that shortly before the fire negotiations were continuing with the lessor for a renewal of the lease and that the lessor subsequently abandoned its plan to use the land. Plaintiff contended, however, and so the trial court ruled, that all of this testimony related to a collateral issue, was speculative and had no bearing on the value of the building.

The contention of defendants that this evidence was admissible under the rule that every factor affecting value is pertinent to the determination of actual cash value is incorrect in the light of the facts herein. Decisions such as *McAnarney* v. *Newark Fire Ins. Co.* (247 N. Y. 176) and *Sebring* v. *Firemen's*

*Ins. Co.* (227 App. Div. 103) relied on by appellants, construed that portion of the policy providing that insurance was afforded to the extent of the actual cash value of the property. More in point are the authorities that a tenant has an insurable interest in improvements and betterments of a structural character made by the lessee. (1 Richards, Insurance, § 78; *Alexandra Restaurant* v. *New Hampshire Ins. Co.*, 272 App. Div. 346, affd. 297 N. Y. 858; *Modern Music Shop* v. *Concordia Fire Ins. Co.*, 131 Misc. 305.) In the *Alexandra Restaurant* case (*supra*), the insured tenant had paid for improvements to the leased building. The defendant issued a so-called "Improvements and Betterments" policy insuring such improvements. The lease contained a provision requiring the landlord to fully repair any damage caused by fire. This was done out of moneys received by the landlord from the proceeds of his own fire insurance policies. It was held that the tenant was entitled to recover. The court, relying upon the mortgagor-mortgagee, the vendor-vendee and the builder-owner cases, reasoned that the contract was not one of indemnity but an absolute promise by the insurer to pay for damage sustained to the property.

This offered proof should have been received and the rejection thereof requires a new trial. However, we do not adopt appellants' contention that the evidence was admissible as being a factor in the cost or value of the destroyed building. It was admissible as bearing upon the question of whether plaintiff had *any* insurable interest in the building at the time of the fire. (Cf. Insurance Law, § 148; 4 Appleman, Insurance Law & Practice, § 2123; *Palisano* v. *Bankers & Shippers Ins. Co.*, 276 App. Div. 523.)

The proffered proof of defendants had pertinency as to this issue. The issuance of a warrant in summary proceedings to remove a tenant cancels the lease and annuls the relation of landlord and tenant. (Civ. Prac. Act, § 1434.) Furthermore, there are provisions in the lease upon which a finding might be made, in the absence of other proof, that upon giving the notice to remove and the failure of the tenant to remove the building within the required time it became the property of the lessor. This proof would be material on the issue as to whether at the time of the loss plaintiff had an insurable interest in the property or, to paraphrase the policy provision, the plaintiff in no event had any interest in the insured building. It must be admitted that the issue was inadequately posed by defendants. It is unnecessary to pass upon the question but caution would have suggested that the defense of extinguishment of insurable interest should have been pleaded in the answers. (Cf. Civ. Prac.

Act, §§ 242, 261; 1 Bender's N. Y. Practice, pp. 587–589; 8 Bender's Forms of Pleading, p. 32; *Foley* v. *Manufacturers' & Builders' Fire Ins. Co.*, 152 N. Y. 131, 134; 1 Richards, Insurance, § 68.)

The defendants, however, should be given the benefit of the doubt and granted a new trial. Whether amendment of the answers would be helpful is a question it is unnecessary to pass upon. Plaintiff certainly was not surprised by the nature of the proof. Curiously, in the opening of plaintiff's counsel he stated to the jury that most of the facts relating to the termination of the lease would be proved by plaintiff. This was not done but instead plaintiff successfully objected to defendants proving the same facts.

Neither do we agree that the evidence was admissible as affecting the amount of the plaintiff's recovery under the new clause " nor in any event for more than the interest of the insured." Once it is found that the plaintiff had an insurable interest at the time of the fire he is entitled to recover the value of the building as it stood, without regard to the fact that he might shortly thereafter be required to remove it.

This clause that we are called upon to construe first appeared in the so-called 1943 standard policy. This State has had three standard fire insuance policies. The first is generally known as the 1887 form and was enacted by chapter 488 of the Laws of 1886. This policy was replaced by the 1918 form (L. 1917, ch. 440). (See 4 Richards, Insurance, Appendix D., p. 2006.) So far as here material the substantive change effected in 1917 was the reduction in the number of the " moral hazard " clauses providing for voidance in case of violation from 14 to 5. (Cf. 39 Ill. L. Rev. 66, 68.) Two of these clauses remaining in the 1918 form are here pertinent. They provided for voidance of the policy (a) " if the interest of the insured be other than unconditional and sole ownership "; or (b) " if the subject of insurance be a building on ground not owned by the insured in fee simple ".

In the ensuing years these clauses were the subject of discussion and criticism. (See 37 Col. L. Rev. 410; 42 Col. L. Rev. 1227, n. 2.) Commencing in 1936 a committee appointed by the National Association of Insurance Commissioners undertook a revision of the 1918 form. (See Proceedings N. A. I. C. 1936, p. 141; 1937, pp. 90–94; 1939, pp. 64–67; 1940, p. 176.) In 1942 the Legislature of this State adopted a new form of standard policy (L. 1942, ch. 900, superseded by L. 1943, ch. 671; Insurance Law, § 168). The principal change effected was the elimination of the so-called " moral hazard " clauses from the 1918 form.

At the same time the new provision was inserted in the policy that the property was insured to the extent of its actual cash value at the time of loss " nor in any event for more than the interest of the insured." (Cf. 39 Ill. L. Rev., 66, 69, 73.)

When these two changes in the 1943 policy — one of omission and one of addition — are considered together a legislative intent may be found. Under the 1918 policy form the insurance was voided if the interest of the insured was other than sole and unconditional or if the subject of the insurance was a building on ground not owned by the insured in fee simple. When these provisions were deleted the draftsmen of the policy form were faced with the problem of the prospective insured whose interest in the property, while sufficient to be insurable, amounted to less than sole and unconditional ownership. These are typified by those having joint or common ownership or life tenants. (See " Some Limited-Interest Problems," 15 Law & Contemporary Problems, 415–430; " Fire Insurance Recovery on a Limited Interest in Property," 50 Col. L. Rev., 960–970; Ins. L. J., 1949, 420–436.) This view is fortified by one of the suggestions made to the committee of the National Association of Insurance Commissioners that the revised policy should " Eliminate the unconditional ownership and chattel mortgage clause and allow recovery on the policy to the extent of the proved insurable interest." (1937 Proceedings, p. 93.)

Under the old policy the case of the insured having a limited interest in the property insured, was dealt with by the provision making the policy void at the option of the company if the interest of the insured was " other than unconditional and sole ownership ". In order to be protected, the owner had to disclose his limited interest and to obtain a rider waiving the unconditional ownership clause. (Cf. 4 Richards, Insurance, p. 2007, Appendix D, lines 20–21.) The effect of the 1943 change was to make a rider unnecessary and to give the insured coverage for his limited interest, whatever it might be.

However, the owner of a building upon leased land which he has the right to remove upon the expiration of the lease, does not have a limited interest in the building. He is the complete owner of the building which in the terms of the old policy is " the subject of insurance." Under the old policy, it was necessary for the owner to obtain a rider waiving the provision of the policy permitting the insurance company to avoid it " if the subject of insurance be a building on ground not owned by the insured in fee simple." Under the new policy, it is no longer necessary to obtain such a rider; the owner of the building is in the same position under the new policy as he

would have been under the old with an appropriate rider. It is settled that, under a policy in the old form, to which an appropriate rider had been attached, the owner of a building on leased land would be covered for the full value of the building as it stood without regard to the length of the unexpired term of his lease (*Alexandra Restaurant* v. *New Hampshire Ins. Co.*, 272 App. Div. 346, affd. 297 N. Y. 858, *supra*). The effect of the 1943 change is to cover the owner of the building to the same extent without the necessity of obtaining a rider.

For similar reasons this case is distinguishable from one where a tenant is leasing a building owned by the landlord. Here the plaintiff at his own expense had erected the building on vacant land owned by the landlord. Absent a finding that his interest in the building had been extinguished the triers of the fact should not be permitted to speculate as to the extent of his financial loss by the remoteness or imminence of the termination of his insurable interest. Otherwise stated, the pertinent clause in the policy should be interpreted upon the basis that this was insurance against physical loss and not against financial loss. The contract was one of insurance against loss by fire to a building owned by plaintiff. It was not an agreement to indemnify him to the extent of his financial loss.

A similar conclusion was reached in *Girard Ins. Co.* v. *Taylor* (6 A D 2d 359). There the plaintiff had issued to the defendant policies insuring the latter against damage by fire to a building. There were provisions therein that defendant was insured in no event for more than his interest in the property. It appeared that defendant had previously owned the land and building but had executed a deed conveying the land. It was contended by the defendant that by virtue of certain provisions in the deed he had retained ownership of the building. He proved, as his damage, the cost of repairs and recovered on that basis. The insurer contended, however that "the interest of the insured" was no more than a right of occupancy terminable upon six months' notice, with the additional right to remove and demolish the structure. In affirming the defendant's recovery, the court said (p. 362) : " The 'interest of the insured' being that of owner, the measure of his loss is, under the policies, the actual cash value of the property, not exceeding the cost of repair. * * * In any event, it is clear that respondent's recovery is not limited by reason of the fact that the building stood upon lands of another. ' The true measure of damages is the real value of the property, and not its relative value to the assured; consequently the amount recoverable in this case

is the real value of the buildings at the time of the fire, and not their relative value to the assured for the purpose of removal.' (*Washington Mills Emery Mfg. Co.* v. *Commercial Fire Ins. Co.*, 13 F. 646, 650.) (See, also, *Washington Mills Emery Mfg. Co.* v. *Weymouth Ins. Co.*, 135 Mass. 503, a companion case sued in the State court ''.)

The principle of law, that the true measure of damages to an insured tenant, who owns a building upon leased land with a right of removal therefrom, is the full replacement value thereof, was enunciated long before any standard policy had been adopted. Thus, in *Laurent* v. *Chatham Fire Ins. Co.* (1 Hall 41) the plaintiff had erected a building upon lands leased from a third party and had the right to remove the structure upon the termination of the lease. Some 15 days before the expiration of the term of the lease the building was destroyed by fire. There was evidence that plaintiff had the right to renew the lease but had taken no action to do so. The plaintiff recovered the amount of his loss under the provisions of a policy issued by defendant. The latter contended that in the light of these facts the measure of damage was the value of the building subject to its removal. Upon appeal, the court held to the contrary and said (pp. 50–51) : '' It is of no importance, whether the tenement stands upon freehold, or upon leasehold ground, or whether the lease is about expiring, or has the full time to run when the fire occurs, or whether it is renewable or not. The condition of the policy is satisfied if the title and ownership are in the insured at the time of the insurance, and at the time of the loss, and the measure of his indemnity is the amount of his interest in the tenement when destroyed by the fire, notwithstanding that the whole interest would have expired the very next day, or soon after the loss occurred.''

It is recognized that these decisions are distinguishable from the instant case if all of the factual claims of appellants are accepted. If it should be determined that plaintiff's interest in the property had ceased to exist prior to the fire, then under the policy provision no recovery could be had. But an approaching loss of interest would not serve to diminish the amount of the damage if it were found that plaintiff had an insurable interest therein at the time of the loss.

The judgment and order should be reversed, on the law and facts, without costs, and a new trial granted.

WILLIAMS, J. (concurring). I agree with my associates that there must be a reversal and a new trial because of the exclusion of evidence which might have demonstrated that at the time of the

fire plaintiff no longer had an insurable interest in the property. I cannot agree, however, that the Trial Justice properly excluded evidence as to the quantum of plaintiff's financial loss. For the purpose of discussion of this latter point, I shall assume that plaintiff had an insurable interest *and* some financial interest at the time of the fire.

The policies in question are in the form prescribed by section 168 of the New York Insurance Law. Insofar as it is material to the question posed, the standard fire policy form provides that the insured may recover "to the extent of the actual cash value of the property at the time of the loss, but not * * * in any event for more than the interest of the insured". Before the amendment of section 168 in 1943, the latter part of this clause was not found in the standard policy. Its addition quite clearly was intended to measure and limit the amount of the loss for which the insured could recover. As was pointed out in the report submitted in 1941 by the Honorable R. FOSTER PIPER to the Joint Legislative Committee for Revision of Insurance Law (p. 11): "It is claimed that the present form needs modernization and improvement both from the standpoint of the insured and the insurer."

Unfortunately, no decisive legislative history is available to reveal the reason for the inclusion of the phrase, so we must determine intent from the language itself. This language is so simple and expressive that its purpose is self-evident. On its face, the phrase points quite compellingly to an attempt to limit recovery to what an insured really might lose. Law review articles have recognized that the amendment makes judicial reconsideration of the question of amount of recovery desirable (33 Texas L. Rev. 1091, 1093; 50 Col. L. Rev. 960, 962, n. 14).

We must not lose sight of the contrast between such an interest-type policy and a valued-type policy, the former being based essentially on the principle of indemnity, the purpose of which is to make an insured whole after a loss. Indemnity insurance is not intended to permit an insured an undeserved gain. Such a result would be contrary to the theory of indemnity and obviously inconsistent with considerations of moral hazard and public policy. As was stated in *Flint Frozen Foods, Inc.* v. *Firemen's Ins. Co. of Newark* (8 N. J. 606, 610): "This conclusion, reached under the clear terms of the policy [no recovery ' in any event for more than the interest of the insured '], is consonant with the fundamental principle of all insurance on property that the policy is a contract of indemnity."

In *McWilliams* v. *Farm & City Mut. Ins. Assn.* (248 Iowa 233, 235) the court stated: "A contract of fire insurance is simply a contract of indemnity, personal between insured and insurer, and does not run with the property covered therein. Where the contract, as here, is limited to 'the interest of the insured in the property' it simply assures reimbursement for his actual loss not exceeding a stated sum."

The 1943 amendment of section 168 not only added the phrase discussed above, but it also removed two of the more important moral hazard clauses, namely, those which voided the policy, (1) if the interest of the insured was other than unconditional and sole ownership, and (2) if the subject of the insurance was a building on ground not owned by the insured in fee simple. These clauses had necessitated the use of riders to preclude the voiding of policies. When these clauses were eliminated, the need for such riders was also eliminated and the legislative purpose effected, as the language in itself accomplished that result.

I see no need for a detailed analysis of cases decided before the statutory change. The Legislature evidently decided that an amendment was required to obviate the confusion which had existed and to simplify the meaning of policies. We should not treat the policy as though there had been no amendment and thus nullify the effect of the change. The purpose of the change was patently to eliminate confusion, not to perpetuate or increase it. We now have an opportunity by following the language of the present policy, to establish the principle firmly that a person who has an insurable interest may recover the actual cash value of the property but not in any event more than his financial loss. Any other conclusion would allow recovery of the actual cash value, regardless of how little financial loss might be suffered by the insured. The problem of moral hazards involved in the latter interpretation needs no elaboration.

The case of *Alexandra Restaurant* v. *New Hampshire Ins. Co.* (272 App. Div. 346, affd. 297 N. Y. 858) mentioned in the prevailing opinion does not assist in interpretation. There, the insured had made certain improvements of a structural character in the premises which it leased and these improvements were damaged by fire. The policy contained a proviso, whereby the insured was considered "sole and unconditional owner of such improvements and betterments any contract or lease the assured may have to the contrary notwithstanding." Naturally, under that language, the insured was permitted to recover the full value of the improvements.

I believe that the 1943 amendment, as was intended, improved the standard fire insurance policy by bringing it more clearly into conformity with principles of true indemnity. Upon the new trial, the defendant should be permitted to introduce proof bearing on the actual financial loss suffered by the insured.

All concur, WILLIAMS, J., in a separate opinion. Present — McCURN, P. J., WILLIAMS, BASTOW, GOLDMAN and HALPERN, JJ.

Judgment and order reserved, on the law and facts, without costs of this appeal to any party, and a new trial granted.