■ ESTELLE RUBIN, Respondent, v CONNECTICUT GENERAL LIFE INSURANCE COMPANY, Appellant.—Judgment, Supreme Court, New York County, entered September 11, 1975, reversed, on the law, and vacated and a new trial directed, with $60 costs and disbursements of this appeal to abide the event. Appeal from order, Supreme Court, New York County, entered October 9, 1975, dismissed as academic, without costs and without disbursements. This action was brought to recover the proceeds of a group life insurance policy issued by defendant Connecticut General Life Insurance Company to Rogers Motors, Inc., on the life of plaintiff's deceased husband. In an order entered May 8, 1973, Justice Carney denied the plaintiff's motion for summary judgment on the ground that an issue of fact existed as to whether Rogers Motors, Inc., continued the insurance coverage of its inactive employees in accordance with the policy plan that precluded individual selection. There is no indication in Justice Carney's order that he intended to limit the trial to the single issue mentioned in his order. Clearly, other issues were presented as to the existence and the extent of coverage. For example, an issue bearing upon the extent of plaintiff's possible recovery was raised as to whether the decedent had been terminated as an employee of Rogers Motors in 1970 by reason of his illness or his retirement. The lower court also committed error in allocating the burden of proof at trial. The plaintiff had the burden of proving that the decedent was covered under the subject policy. *(Carles v Travelers Ins. Co.,* 238 App Div 43, 44.)* Hence, it was plaintiff's evidentiary responsibility to show that Rogers continued its coverage under a plan that precluded individual selection. The lower court incorrectly placed that burden on the defendant. It was unnecessary for the defendant to plead an affirmative defense challenging the viability of Rogers' plan since its denial of liability effectively placed that matter in issue *(Carles v Travelers Ins. Co., supra,* p 45).* It should be observed that the plaintiff also had the burden of demonstrating that her husband was terminated by reason of illness rather than retirement. Concur—Murphy and Lupiano, JJ.; Silverman, J., concurs in a memorandum, and Stevens, P. J., and Lane, J., dissent in a memorandum by Lane, J., as follows: Silverman, J., concurring. I think the verdict is against the weight of the evidence. The group life policy in this case provided that insurance on any employee should automatically cease on the date of termination of his employment, except that "If an employee's active service is terminated on account of sickness, injury or retirement, employment will be deemed to continue until the Employer cancels the employee's insurance. * * * Such continuation of insurance must be in accordance with a plan which precludes individual selection by the Employer". The issue presented to the jury was whether the continuation of insurance of decedent Barnet Rubin was in accordance with "a plan which precludes individual selection by the Employer". The employer here was Rogers Motors, Inc., an automobile dealer, owned by Joseph Rogers, Mr. Rubin's son-in-law, and Joseph Rogers' father. Mr. Rubin was employed by Rogers Motors from March 20, 1968, until November 14, 1970. In September, 1970 Mr. Rubin suffered a stroke which caused him to be hospitalized twice in the fall of 1970. The second hospitalization ended October 14, 1970. Mr. Rubin continued to receive a salary from Rogers Motors until November 14, 1970. Thereafter, he neither worked for nor received a salary from Rogers Motors. He died on March 22, 1972. It was the contention of plaintiff that Mr. Rubin's insurance coverage was continued under a plan which complied with the policy

provision quoted above, i.e., "a plan which precludes individual selection by the Employer". Rogers Motors was a relatively small business with approximately 30 employees. There was no writing embodying the "plan" nor, so far as appears, any statements to anyone as to what the "plan" was or whether it even existed. There was no well-established, generally understood practice. The testimony was that the "plan" was arrived at during a conversation between Mr. Joseph Rogers and his father, the two constituting the board of directors. No minutes were kept; indeed, the only minutes the corporation kept was when a resolution was necessary for filing with the State or with a bank. The conversation took place at the time of the illness of one of their employees. The "plan" appears to have been geared to "key employees" and Mr. Joseph Rogers testified that he decided who was a key employee. He also stated that the "plan" covered all those with job qualification of salesman, senior executive, and department manager. In a situation such as here existing, with only four employees for whom insurance was continued after termination, with the decisions as to the continuation of insurance made in a private conversation between the two owners of the business, with no written statement of any plan anywhere, and with, so far as appears, no revealing to the employees or anyone else what the "plan" was, it appears to me obvious that individual selection of employees was not "precluded." Indeed, it was built into the company's practices. The continuation with respect to decedent Barnet Rubin appears to be almost a classic case of individual selection. As I have said, Mr. Barnet Rubin was Joseph Rogers' father-in-law. Mr. Barnet Rubin had for years been engaged in the oil and gasoline station business. He was forced to retire from that business as a result of a severe stroke suffered in May, 1967. Thereafter, in March, 1968, Mr. Rubin commenced employment in his son-in-law's business, a different business from what he had been engaged in. At that time, Mr. Rubin had been receiving Social Security disability payments and continued to receive them for about nine months thereafter. Employed at first as a "service salesman", his qualification was changed to "senior executive," a promotion that skipped two intermediate employment grades. His entire employment with Rogers Motors lasted about two and one-half years, including a period of illness due to his second stroke and two hospitalizations in the fall of 1970. It seems rather plain that Mr. Rubin and his wife, the plaintiff, Mr. Joseph Rogers' mother-in-law, were the beneficiaries of individual selection by Rogers Motors. While there was testimony that the insurance company's employee knew that Mr. Rubin's coverage was being continued and premiums paid on that basis, this would seem to present at most an issue as to waiver or estoppel. That issue was not presented to or passed upon by the jury. For these reasons I agree that the judgment should be reversed, the verdict should be set aside, and a new trial ordered. Lane, J., dissenting. Rogers Motors Co., Inc., was issued a group life insurance policy by the Connecticut General Life Insurance Company to insure the lives of its personnel. Each employee of Rogers was issued a group life insurance certificate in an amount determined by the employer by reference to the age of the employee and his job classification. The group policy allowed the employer to continue to pay premiums on the policy of an employee whose active service terminated due to illness, in which event employment and concomitant insurance coverage would be deemed to continue or to cancel the policy of that employee upon his failing to continue active service due to illness. However, continuation of insurance was required to be in accordance with a plan of the employer which precluded individual selection by the employer. Rogers Motors was a closely

held corporation, all of the shares of which were equally divided between Irving Rogers and his son Joseph Rogers. Barnet Rubin, the father-in-law of Joseph Rogers, was employed by Rogers Motors in March, 1968 as a salesman. In that capacity, he was afforded insurance coverage in the amount of $6,000 under the group policy. In October, 1969 his job classification was changed to that of senior executive and his life insurance coverage was increased to $30,000. Rubin worked until November, 1970, when he became ill. Rogers Motors opted to continue his insurance coverage and continued to pay the necessary premiums therefor. Rubin died on November 22, 1972. Claim was made on his insurance policy which was rejected by Connecticut General. His widow, Estelle Rubin, as his named beneficiary, brought this suit to recover the amount of $30,000. Estelle Rubin moved at Special Term for summary judgment. This motion was opposed by Connecticut General on the grounds that at least three issues of fact were extant barring summary judgment. Justice Carney, sitting at Special Term, determined that only one triable issue of fact existed; namely, that: "It cannot now be determined upon the submitted papers whether the continuation of insurance coverage by Rogers Motors, Inc. as to employees inactive by reason of sickness, injury or retirement was in accordance with a plan which precluded individual selection". On appeal, we affirmed the order of Special Term, without opinion (42 AD2d 1055). The action was then brought to trial before Justice Gabel, who limited the trial to the very issue framed by Justice Carney. After a jury trial, judgment was entered in favor of the plaintiff. I would affirm. The previous order clearly delineated the single issue left for trial. While Connecticut General in its papers in opposition to the motion for summary judgment alleged that there were *"at least* three issues of material fact which cannot be disposed of on * * * motion [emphasis mine]", the order ultimately entered stated only that defendant opposed the motion "on the ground that there are three issues of fact" and then, in a subsequent ordering paragraph, stated that only one of the three issues raised was a valid issue of fact; namely, the question of whether the employer practiced individual selection. As to this one remaining issue, the testimony at trial revealed that all four key employees who became ill and could not continue active service had their life insurance coverage continued by Rogers Motors. Those personnel whose coverage was shown not to have been continued were either fired or quit, and therefore that evidence clearly was not probative of a policy of selectivity by the employer. The "plan" alluded to in the group policy of insurance was not required to be in writing. The evidence was sufficient to allow the jury to conclude that Rogers Motors acted within the policy requirements and to find in favor of the plaintiff. Lastly, it would appear that the burden of proof was properly cast upon the insurer. The pertinent language of the insurance policy in question provides that: "If an employee's active service is terminated on account of sickness, injury or retirement, employment will be deemed to continue until the Policyholder cancels the employee's insurance. * * * Such continuation of insurance must be in accordance with a plan which precludes individual selection by the Policyholder". That clause is couched in terms of a condition subsequent in which event the burden of proof is on the insurer *(Ell Dee Clothing Co. v Marsh,* 247 NY 392, 396; *Sonn Brush Co. v Lumber Mut. Fire Ins. Co.,* 249 App Div 675, mot for lv to app den 273 NY 682), rather than in terms of an exclusion, in which event the burden of proof is on the claimant *(Carles v Travelers Ins. Co.,* 238 App Div 43, 44). Accordingly, the judgment of the Supreme Court, New York County, entered September 11, 1975 in favor of the plaintiff, should be affirmed.