**C-SUZANNE BEAUTY SALON, LTD., by Salvatore Ferro and Patricia Ferro, his wife, Plaintiff-Appellee,**

v.

**GENERAL INSURANCE COMPANY OF AMERICA, Defendant-Appellant,**

and

**Lawley Service, Inc., Robert Beatty Agency, Defendants.**

**No. 386, Docket 77-7346.**

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1977.

Decided March 17, 1978.

---

James E. Crotty, Buffalo, N. Y., for plaintiff-appellee.

Max J. Gwertzman, New York City, Richard H. Huber, Gwertzman & Pfeffer, New York City of counsel, for defendant-appellant.

Before FRIENDLY, SMITH and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

## I. INTRODUCTION

In November of 1973, Salvatore and Patricia Ferro purchased the C–Suzanne Beauty Salon from Dorothy Smith, its sole stockholder. C–Suzanne's business was located in leased premises in Kenmore, New York. At the time of the sale, C–Suzanne's personal property was insured against loss by fire by the General Insurance Company of America in the amount of $15,000. The Ferros decided that this amount was inadequate and in January, 1974, increased its limit to $35,000. On April 19, 1974, Salvatore Ferro telephoned his insurance agent and inquired whether the policy was in effect. It was. The next day, an incendiary fire occurred. The business closed on a permanent basis.

C–Suzanne filed a proof of loss with General Insurance on November 18, 1974. New York counsel for General Insurance responded by requesting that Mr. and Mrs. Ferro appear for an examination under oath at a specified time and place.[1] The Ferros' lawyer sent the following reply on December 23, 1974:

> Mr. and Mrs. Ferro have consulted with the undersigned regarding this claim, and after due deliberation, they have advised our office that they do not intend to proceed.
>
> Accordingly, they will not be present on the above date and time for the Examination under Oath.
>
> We suggest that you mark your file ahead, and if lawsuit is not instituted within 12 months from the date of loss, then you will have a "free one".
>
> The object of my letter is to save you the time and trouble of coming to Buffalo needlessly.

General Insurance did not insist on conducting an examination, although the policy gave it the right to do so.[2] The Ferros

---

1. The letter provided in full as follows:

   Dear Madam and Sir:
   We wish to advise you that we have been authorized by the General Insurance Company, whom we represent, to conduct an Examination under Oath under its policy of insurance No. CP394169 with regard to claim for loss and damage alleged to have been sustained by you on or about the 20th day of April, 1974, by reason of fire to property situate 2345 Sheridan Drive, Kenmore, New York.
   You are to appear for the said Examination, which will be conducted by the undersigned, at the offices of Offerman, Fallon, Mahoney & Adner, Statler Hilton Hotel, Buffalo, New York, on Thursday, January 9, 1975, at 11:00 A.M. of that day, and at such other times as may be necessary.
   You are requested to produce upon this Examination all books of account, records, checks, invoices, policies of insurance, purchase orders, correspondence, leases, income tax returns, and all other memoranda and data, of whatever nature, pertaining to the subject matter of the said Examination.
   In requesting this Examination under Oath, the General Insurance Company neither admits nor denies any liability for any loss which may have occurred and expressly reserves all of its rights and defenses under the said policy of insurance.

2. Lines 113–122 of the New York standard fire insurance policy provide as follows:

   The insured, as often as may be reasonably required, shall exhibit to any person designated by this Company all that remains of any property herein described, and submit to examinations under oath by any person named by this Company, and subscribe the same; and, as often as may be reasonably required, shall produce for examination all books of account, bills, invoices and other vouchers, or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by this Company or its representative, and shall permit extracts and copies thereof to be made.

apparently changed their minds about pursuing their claim, however, for they retained a new lawyer, and on April 18, 1975, two days before the one-year limitation of action period imposed by the policy was to expire,[3] C–Suzanne brought suit in New York State Supreme Court in Erie County. The action was removed to the United States District Court for the Western District of New York. The basis for federal jurisdiction is diversity of citizenship.

General Insurance interposed a number of defenses to the action. Three of them are relevant here. First, it asserted that the Ferros' refusal to appear for an examination under oath constituted a breach of the "cooperation clause" of the policy, *see* note 2 *supra,* which precluded recovery. Second, it asserted that the Ferros had committed arson and, concomitantly, that they were guilty of fraud in filing a proof of loss which stated the contrary. Third, it asserted that the amount of damage alleged to have been sustained in the proof of loss was grossly and fraudulently exaggerated.

Prior to trial, General Insurance moved for summary judgment on the basis of the alleged breach of the cooperation clause. The district court denied the motion but ordered the Ferros to submit to an examination under oath. The court's order, which had been drafted by General Insurance, provided that the denial of the motion

to dismiss was without prejudice to General Insurance's right to renew the motion at a later date if the delay of the examination proved to have prejudiced General Insurance's investigation of the facts. The motion was later renewed, but it was denied on the ground that there had been no showing of prejudice.

At trial, C–Suzanne sought to recover the full value of improvements that it had made at the beginning of the lease when the building was remodeled to make it suitable for a beauty salon. Before the court charged the jury, General Insurance requested the following charge regarding improvements and betterments:

> if the jury finds that the assured did not replace the improvements and betterments which were in the premises at the time of loss, in that event they are limited to the unexpired term of the lease, which in this case was approximately one year [C–Suzanne had a three-year lease and an option to renew that it had exercised for an additional two years; the renewal period would have expired on April 1, 1975], and must apportion the amount to be one fifth of whatever they find the value of these improvements and betterments to have been. . . .

The requested charge was based on a policy provision set out in the margin.[4] The district judge declined to give this charge. He

N.Y.Ins.Law § 168(6) (McKinney). Whenever applicable, references to C–Suzanne's policy will be accompanied by a reference to the lines of the New York standard fire insurance policy.

**3.** See lines 157–161 (the limitation period was extended to two years in 1975).

**4.**
### VIII.  VALUATION

Subject to the provisions and stipulations of this policy, the following bases for valuation of property are established:

A. Tenant's Improvements and Betterments:

1. If repaired or replaced at the expense of the insured within a reasonable time after loss, the actual cash value of the damaged or destroyed improvements and betterments.

2. *If not repaired or replaced within a reasonable time after loss, that proportion of the original cost at time of installation of the damaged or destroyed property which the unexpired term of the lease or rental agree-*

*ment, whether written or oral, in effect at the time of loss bears to the periods from the dates such improvements or betterments were made to the expiration date of the lease.*

3. If repaired or replaced at the expense of others for the use of the insured, there shall be no liability hereunder.

B. Books of account, manuscripts, abstracts, drawings, card index systems and other records (except film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing) for not exceeding the cost of blank books, cards or other blank material.

C. Film, tape, disc, drum, cell and other magnetic recording or storage media for electronic data processing for not exceeding the cost of such media in unexposed or blank form.

D. All other property at actual cash value. (emphasis added).

explained that C–Suzanne's interest in the improvements and betterments extended beyond the term of the lease because there was a prospect that it would have negotiated a new lease and continued to occupy the premises even after the old lease expired. The judge was of the view that the jury was entitled to consider that prospect and award damages on that basis.

The jury returned a verdict in favor of C–Suzanne in the amount of $20,000. General Insurance made a post-trial motion for a judgment notwithstanding the verdict, again raising certain issues relevant to this appeal. It renewed its arguments based on the cooperation clause. In addition, it argued that fraud had been established as a matter of law. Finally, it argued that the court had erred in denying the request to charge based on the provision dealing with improvements and betterments. In a brief written decision, the district court rejected each of these arguments and denied the motion. As noted above, the first argument was rejected on the ground that no prejudice had been shown. The second argument—or collection of arguments—was rejected on the ground that reasonable minds could differ over the Ferros' responsibility for the fire. The court's reason for rejecting the third argument was somewhat different than the reason it had given at trial. The court's reasoning is explained in detail later in this opinion. *See* Part IV, *infra.*

On this appeal, General Insurance again raises its arguments based on the cooperation clause, the alleged fraud and the improvements and betterments provision. We reject the first two, but on the basis of the third we reverse and remand for a new trial on the issue of damages.[5]

## II. THE COOPERATION CLAUSE

■ The insurance policy provides that "[n]o suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with . . . ."[6] One of the "requirements" of the policy is the so-called "cooperation clause," which states that the insured, "as often as may be reasonably required, shall . . . submit to examinations under oath . . . ."[7] In *Hudson Tire Mart, Inc. v. Aetna Cas. & Sur. Co.,* 518 F.2d 671, 674 (2d Cir. 1975), this Court observed that the purpose of the cooperation clause "is to enable the insurer to obtain all knowledge and facts concerning the cause of the fire and the loss involved while the information is fresh in order to protect itself from fraudulent and false claims." *See also Claflin v. Commonwealth Ins. Co.,* 110 U.S. 81, 94–95, 3 S.Ct. 507, 28 L.Ed. 76 (1884). Although it is true, as we noted in *Hudson Tire,* that a refusal to appear for an examination under oath constitutes a material breach of the contract of insurance, it is also true, as a general principle of New York law, that "equity will not enforce forfeitures." *Hal Roach Studios, Inc. v. Film Classics, Inc.,* 156 F.2d 596, 599 (2d Cir. 1946). Thus, in construing the cooperation clause, the New York Court of Appeals has held that "a breach which will defeat a recovery cannot be based upon technical or unimportant omissions or defects in the performance by either party." *Porter v. Traders' Ins. Co.,* 164 N.Y. 504, 509, 58 N.E. 641, 642–43 (1900). Rather, a "willful and fraudulent withholding of information" must be shown. *Happy Hank Auction Co. v. American Eagle Fire Ins. Co.,* 1 N.Y.2d 534, 539, 154 N.Y.S.2d 870, 873, 136 N.E.2d 842, 844 (1956). In *Happy Hank,* the Appellate Division unanimously agreed that "it is clear that plaintiff has willfully and designedly refused to answer questions and produce documents that are indisputably material to its claim," 286 A.D. 505, 510, 145

---

**5.** Our conclusion that there must be a new trial on the issue of damages makes it unnecessary to deal with the issues raised concerning the plaintiffs' experts' testimony on damages, which was based on price lists and computer printouts that they had examined. These are matters to be resolved by the trial judge using the standards set out in Fed.R.Evid. 703.

**6.** Lines 157–160.

**7.** Lines 113–116.

N.Y.S.2d 206, 211–12 (1st Dep't 1955), and it granted summary judgment and ordered dismissal of the complaint. The Court of Appeals modified this order so as to reinstate the complaint, explaining that willfulness and fraud present "the kind of question of fact that cannot, except in the most extreme of cases, be resolved through the study of affidavits." 1 N.Y.2d at 539, 154 N.Y.S.2d at 873, 136 N.E.2d at 844. The reluctance of the New York courts to enforce a forfeiture is illustrated well in the case of *Mortgage Affiliates Corp. v. Commercial Union Ins. Co.*, 27 A.D.2d 119, 276 N.Y.S.2d 404 (2d Dep't 1967). In that case, there was a refusal to comply with the cooperation clause. The court ordered dismissal of the action, but it made its order conditional so that the sanction of dismissal would not be applied if the plaintiff complied with the provisions of the policy within 20 days.

■ Here, the district judge's handling of the cooperation clause issue was consistent with the principles discussed above. By denying General Insurance's pre-trial motion to dismiss, while at the same time requiring the Ferros to submit to an examination, the district judge reached a result much like that reached in *Mortgage Affiliates.* By conditioning the renewal of the motion to dismiss upon a showing of prejudice, the district judge was acting in accordance with the principle that technical or unimportant defects will not justify a forfeiture. At the beginning of the trial, when the motion to dismiss was renewed, counsel for both sides agreed that the issue could be resolved as a matter of law based on the facts disclosed in affidavits and the letters exchanged between the parties. Yet the documentary record in this case, as in *Happy Hank,* hardly justifies a finding of willfulness and fraud as a matter of·law.

General Insurance's letter setting a date for an examination states that it was "requesting" an examination. The Ferros' lawyer replied that an examination would be a waste of time in view of their decision not to press their claim. This reply clearly stated, however, that suit might still be brought within the one-year period provided in the policy. In view of this reservation of rights, General Insurance might have insisted on its right to examine the Ferros, but it did not do so. Instead, General Insurance appears to have decided to mark time silently until the period for bringing suit expired. That the Ferros ultimately changed their minds and decided to sue cannot justify a conclusion that, as a matter of law, they willfully refused to be examined.[8]

## III. FRAUD

■ General Insurance argues that it proved that the proof of loss was fraudulent as a matter of law. It is undisputed that this document was inaccurate—it failed to disclose the existence of a security interest covering the insured property. It is also undisputed that the loss claimed was not proved—the jury's verdict was for less than half the amount claimed in the proof of loss. However, there is a world of difference between falsity and fraud. The district court explained that the failure to disclose the security interest could have been the result of a careless oversight. The court also pointed out that the discrepancy between the verdict and the proof of loss could have been attributable to the evaluation procedures used by the licensed fire insurance adjusters who prepared the proof of loss; they had made their calculations based on replacement values rather than cost. In any event, an inability to prove a

8. Our decision is based in part on our conclusions with respect to issues not considered by the district court. "In the review of judicial proceedings the rule is settled that, if the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." *Helvering v. Gowran,* 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 (1937); *see California Bankers* *Assn. v. Shultz,* 416 U.S. 21, 71, 94 S.Ct. 1494, 39 L.Ed.2d 812 (1974); *Picture Music, Inc. v. Bourne, Inc.,* 457 F.2d 1213, 1215 n. 5 (2d Cir.), *cert. denied,* 409 U.S. 997, 93 S.Ct. 320, 34 L.Ed.2d 262 (1972); *Berke v. Lehigh Marine Disposal Corp.,* 435 F.2d 1073, 1075–76 n. 2 (2d Cir. 1970), *cert. denied,* 404 U.S. 825, 92 S.Ct. 55, 30 L.Ed.2d 53 (1971).

claim does not establish the fraudulence of the claim. General Insurance's allegation of fraudulent intent rested almost entirely on an inference drawn from the proof that C–Suzanne's business had been poor, the limit of its policy had been increased, and the fire resulted from arson on the day after Salvatore Ferro inquired about the policy. However, the Ferros testified at trial that they were not responsible for the fire. Although the inference argued by General Insurance is a strong one, the mere fact that we might have drawn it if the question had been ours to decide does not mean that the jury was required to do so. By its verdict, the jury rejected the claim that the Ferros were responsible for the arson, apparently choosing to believe the Ferros' testimony.[9] In view of the conflicting evidence and the inconclusive nature of General Insurance's proof, we cannot say that the district court erred in declining to upset the jury's verdict.[10]

**9.** It is noteworthy that the jury reached this conclusion after being instructed by the district judge that the standard of proof to be applied was the preponderance of the evidence standard. Under New York law, however, fraud must be proved by clear and convincing evidence. *See McDonnell v. American Leduc Petroleums, Ltd.,* 456 F.2d 1170, 1176 (2d Cir. 1972). This error can only have operated to the defendant's benefit.

**10.** The test to be applied in reviewing the district court's denial of the motion for a judgment notwithstanding the verdict is not in dispute. In *Simblest v. Maynard,* 427 F.2d 1, 4 (2d Cir. 1970), this Court explained:

> This standard has been expressed in various ways. Simply stated, it is whether the evidence is such that, without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable men could have reached. . . .
>
> On a motion for judgment n. o. v., the evidence must be viewed in the light most favorable to the party against whom the motion is made and he must be given the benefit of all reasonable inferences which may be drawn in his favor from that evidence.

Similarly, in *Armstrong v. Commerce Tankers Corp.,* 423 F.2d 957, 959 (2d Cir.), *cert. denied,* 400 U.S. 833, 91 S.Ct. 67, 27 L.Ed.2d 65 (1970), this Court stated:

> Whether the motion is one to direct a verdict or to set aside a verdict which the jury has returned, the test applied by the court is the

## IV. IMPROVEMENTS AND BETTERMENTS

■ C–Suzanne's policy covers "improvements and betterments," which are defined as "the insured's use interest in fixtures, alterations, installations or additions comprising a part of the buildings occupied but not owned by the insured and made or acquired at the expense of the insured exclusive of rent paid by the insured, but which are not legally subject to removal by the insured." The policy also contains a separate provision that establishes a formula for determining the value of such improvements and betterments. *See* note 3 *supra.* The district judge, however, declined to charge the jury in accordance with these provisions of the policy and relied instead on the New York case of *Modern Music Shop, Inc. v. Concordia Fire Ins. Co.,* 131 Misc. 305, 226 N.Y.S. 630 (N.Y.Mun.Ct. 1927), which he believed to be controlling.

> same. The evidence must be viewed in the light most favorable to the party other than the movant. The motion will be granted only if (1) there is a complete absence of probative evidence to support a verdict for the nonmovant or (2) the evidence is so strongly and overwhelmingly in favor of the movant that reasonable and fair minded men in the exercise of impartial judgment could not arrive at a verdict against him.

The standard to be applied by the Court of Appeals is the same as the standard to be applied by the district court. 5A Moore's Federal Practice ¶ 50.07[2], at 50–82 to 50–83 (2d ed. 1977); Wright & Miller, Federal Practice and Procedure: Civil § 2524, at 542 (1971); *see, e. g., Havanich v. Safeco Ins. Co.,* 557 F.2d 948, 950 n. 2 (2d Cir. 1977); *Bernardini v. Rederi A/B Saturnus,* 512 F.2d 660, 662 (2d Cir. 1975). There is an open question concerning whether this standard is substantive or procedural for purposes of *Erie R. R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). *See Simblest v. Maynard, supra,* 427 F.2d at 5. In the absence of a suggestion that an application of the New York standard would produce a different result, we apply the federal standard, which the district court and the parties have assumed to be proper. *See Begley v. Ford Motor Co.,* 476 F.2d 1276, 1278 n. 2 (2d Cir. 1973); *Peterson v. Allcity Ins. Co.,* 472 F.2d 71, 78 n. 11 (2d Cir. 1972); *Park v. Village of Waverly,* 457 F.2d 1139, 1140 n. 1 (2d Cir. 1972) (per curiam).

The jury was instructed to value improvements at actual cash value. This was error.

In *Modern Music,* the insured leased a store which it used as a music shop. Its fire insurance policy covered its insurable interest in improvements and betterments but did not define what they were or provide a formula for their valuation. At its own cost and expense, and with the permission of the landlord, the insured converted the basement into a showroom. The improvements included things such as walls, floors, ceilings, doors and plumbing and electrical installations—the same kind of things added by C–Suzanne. The insured's landlord disclaimed any interest in the improvements. A fire occurred, and a dispute arose concerning the improvements. The court first held that the insured had an insurable interest in the improvements and then turned to the question of the extent of the recoverable damage. The insurance company argued that the insured could not recover the full value of the improvements but was limited to the value of their use for the unexpired term of the lease. The court disagreed and held that, because the insured had absolute title to the improvements, it could recover for their full value. *See also Federowicz v. Potomac Ins. Co.,* 7 A.D.2d 330, 183 N.Y.S.2d 115 (4th Dep't 1959); *Laurent v. Chatham Fire Ins. Co.,* 1 N.Y.Super.Ct. 45 [Hall. 41] (1828); 15 Couch on Insurance 2d § 54:213 (2d ed. 1966).

Although we are unaware of a New York case in point, we assume, without deciding, that in the absence of a controlling policy provision a New York court would award only the value of the improvements and betterments for the unexpired term of the lease if presented with a case in which they would lawfully become the property of the lessor at the expiration of the lease. *See*

*Lighting Fixture Supply Co. v. Fidelity Union Fire Ins. Co.,* 55 F.2d 110, 113 (5th Cir.), *cert. denied,* 286 U.S. 558, 52 S.Ct. 641, 76 L.Ed. 1292 (1932); *Grand Forks Seed Co. v. Northland Greyhound Lines, Inc.,* 168 F.Supp. 882, 884–85 (D.N.Dak.1959). In the absence of a controlling state decision, we are justified in making this assumption.[11] *Locke Manufacturing Cos. v. United States,* 237 F.Supp. 80, 85–86 n. 8 (D.Conn.1964) (Timbers, *J.*); *see Marina Management Corp. v. Brewer,* 572 F.2d 43, 45–46 (2d Cir. 1978).

The district court considered these decisions and concluded that the crucial question is whether the lessee or the lessor would own the improvements and betterments and have the right to remove them when the lease expired. Unfortunately, neither of the parties put C–Suzanne's lease into evidence, although it had been marked for identification as one of plaintiff's exhibits. The court was thus faced with the problem of deciding the relative property rights of the lessor and the lessee without a copy of the lease. *See Chicago Title & Trust Co. v. Fox Theatres Corp.,* 164 F.Supp. 665, 671 (S.D.N.Y.1958). The district court also concluded that although the plaintiff bears the burden of proof on the issue of damages,[12] the defendant bears it on the issue of mitigation of damages.[13] The court believed that the issue of whether the plaintiff had the right to keep the improvements at the expiration of the lease was related to the issue of mitigation of damages. Accordingly, General Insurance was held to have failed to carry its burden, having neglected to introduce the lease into evidence.

The district court erred in assuming that the rule of *Modern Music* is applicable where, as here, the insurance policy contains an express provision dealing with the

---

**11.** This assumption finds support in a line of New York cases that permit a lessor to recover for damage to buildings erected by his lessee where the building is to become the property of the lessor at the expiration of the lease. *See* 3 Couch on Insurance 2d § 24:59, at 143 n. 6 (1960).

**12.** The district court was correct although it cited no authority for this proposition. *See*

*Haughey v. Belmont Quadrangle Drilling Corp.,* 284 N.Y. 136, 142, 29 N.E.2d 649, 652 (1940).

**13.** Again, the court was correct although it cited no authority for this proposition. *See Cornell v. T. V. Development Corp.,* 17 N.Y.2d 69, 74, 268 N.Y.S.2d 29, 33, 215 N.E.2d 349, 352 (1966).

valuation of improvements and betterments. *Compare Magulas v. Travelers Ins. Co.,* 114 N.H. 704, 327 A.2d 608 (1974); *Johnson & Dix, Inc. v. Burlington Mutual Fire Ins. Co.,* 123 Vt. 488, 194 A.2d 401 (1963).

Under *Modern Music,* title to improvements and betterments relates to the issue of valuation—absolute title produces a recovery of full value, while a mere use interest apparently produces a recovery apportioned over the unexpired term of the lease. At best, this rule subjects insurance companies to the hazards of litigating the relative property rights of third parties. This is difficult because the lessor is not a party to the litigation and has no interest in fighting for his rights in the destroyed property; he may in fact be friendly to the lessee's cause, as was the case in *Modern Music.* At worst, the company could be saddled with the burden of proof on the issue, as occurred here. In view of the inauspicious nature of the rule, it is not at all surprising that insurance companies would adopt express policy provisions dealing with the subject. Although fairness would dictate that the insured should not be denied a recovery of full value for those items which he has the right to keep at the end of the lease, it is not at all unfair to impose on him the burden of proving which items those are. After all, he is in the best position to know the facts and to obtain relevant evidence.

C–Suzanne's policy contains express provisions dealing with valuation. In place of the uncertainties that would attend litigation over title to the improvements and betterments, the policy substitutes an objective test—full value may be recovered only if the insured repairs or replaces the improvements and betterments; if they are not repaired or replaced, recovery is limited to the value of their use. The allocation of the burden of proof on this issue is as straight-forward as it is fair. The insured bears the burden of proving the amount of damage,[14] and the insurance company bears the burden of proving facts in mitigation of damage[15] by proving that the improvements and betterments were not repaired or replaced.

■ The policy does not abandon the issue of title; it simply divorces it from the issue of valuation and associates it with the preliminary issue of coverage. The coverage provisions of the policy define "improvements and betterments" as "fixtures, alterations, installations or additions comprising a part of the buildings occupied but not owned by the insured and made or acquired at the expense of the insured exclusive of rent paid by the insured, *but which are not legally subject to removal by the insured*" (emphasis added). Fixtures, alterations and the like which are "legally subject to removal by the insured" are not "improvements and betterments" at all; they are ordinary personal property to which a different rule of valuation applies.[16] Thus, before a court reaches questions of valuation, a preliminary issue of coverage must be resolved.

It is well established in New York that the insured bears the burden of proof on issues of coverage.[17] Accordingly, before the insured can assert any claim at all for fixtures, alterations and the like, he must prove that they were made or acquired at his expense. If this is all he can prove, then

14. *See* note 12 *supra.*

15. *See* note 13 *supra.*

16. *See* note 4 *supra,* subdivision D ("All other property at actual cash value.").

17. *See Ruffalo's Trucking Service, Inc. v. National Ben-Franklin Ins. Co.,* 243 F.2d 949, 952–53 (2d Cir. 1957); *Lavine v. Indemnity Ins. Co.,* 260 N.Y. 399, 410, 183 N.E. 897, 900 (1933); *Rubin v. Connecticut Gen. Life Ins. Co.,* 56 A.D.2d 526, 391 N.Y.S.2d 418, 419 (1st Dep't 1977); *Bogardus v. United States Fidelity & Guar. Co.,* 269 A.D. 615, 621, 58 N.Y.S.2d 217, 222 (4th Dep't 1945); *Goell v. United States Life Ins. Co.,* 269 A.D. 573, 574, 55 N.Y.S.2d 732, 732–33 (1st Dep't 1945); *Steinmann v. Metropolitan Life Ins. Co.,* 257 A.D. 656, 657, 15 N.Y.S.2d 51, 52 (1st Dep't 1939); *Carles v. Travelers' Ins. Co.,* 238 A.D. 43, 44–45, 263 N.Y.S. 29, 31 (1st Dep't 1933); *Mobil Oil Corp. v. Reliance Ins. Co.,* 69 Misc.2d 876, 879, 332 N.Y.S.2d 532, 535–36 (Sup.Ct.N.Y.County 1971), *aff'd mem.* 39 A.D.2d 839, 333 N.Y.S.2d 747 (1st Dep't 1972); *Olenick v. Government Employees Ins. Co.,* 68 Misc.2d 764, 774, 328 N.Y.S.2d 50, 60 (Sup.Ct. Nassau County 1971),

they will be treated as improvements and betterments and valued in the manner specified in the policy, depending on whether they were repaired or replaced. If, in addition to proving that they were made or acquired at his expense, he can prove that he had the legal right to remove them, then, and only then, can he seek to treat them as ordinary personal property and recover actual cash value without regard to the policy provisions dealing with repair or replacement.

Accordingly, we hold that the district court erred in characterizing the issue as one of valuation rather than one of coverage. In doing so the district court misallocated the burden of proof. On the record before us, it is not possible to determine what portion of the jury's verdict is allocable to improvements. Therefore, a new trial on the issue of damages is necessary.

Reversed and remanded for a new trial on the issue of damages.

*modified,* 42 A.D.2d 760, 346 N.Y.S.2d 320 (2d Dep't 1973); *Lapierre, Litchfield & Partners v. Continental Cas. Co.,* 59 Misc.2d 20, 23, 297 N.Y.S.2d 976, 979 (Sup.Ct. N.Y.County), *modified,* 32 A.D.2d 353, 302 N.Y.S.2d 370 (1st Dep't 1969).